721 So.2d 671 (1998)
J.H. PARKER CONSTRUCTION COMPANY, INC., Appellant,
v.
BOARD OF ALDERMEN OF the CITY OF NATCHEZ, Mississippi, Appellee.
No. 96-CA-00803 COA.
Court of Appeals of Mississippi.
August 4, 1998.
*672 Joshua J. Wiener, Jackson, for Appellant.
Walter Brown, Natchez, for Appellee.
Before BRIDGES, C.J., and HERRING and SOUTHWICK, JJ.
SOUTHWICK, Judge, for the Court:
¶ 1. J.H. Parker Construction Company submitted a sealed bid for a public construction project advertised by the City of Natchez. After the City awarded the construction project to another company, Parker Construction filed a bill of exceptions with the Circuit Court of Adams County asserting that the City impermissibly waived a mandatory bidding requirement. The circuit court held that the City awarded the contract to the lowest and best bidder and that the City's decision was neither arbitrary nor capricious. Parker Construction appeals alleging that the court erred in upholding the City's award of the construction project. We disagree and affirm.

STATEMENT OF FACTS
¶ 2. On January 12, 1996, the City of Natchez advertised for sealed bids for a public construction project entitled "Contract I Earthwork for the Visitor Reception and Intermodel Transportation Center." The bid invitation informed contractors that an "award would not be made to any bidder submitting a proposal involving omissions or irregularities outlined in Section 102 of the 1990 Edition of the Standard Specifications for Road and Bridge Construction...." Potential bidders were notified that a copy of the "Standard Specifications" could be obtained from the Mississippi State Highway Department.
¶ 3. In conjunction with the construction project, the City produced and published a project manual that contained notices to prospective bidders, forms, and other pertinent *673 information. Section 904 of the project manual incorporated the 1990 edition of the "Standard Specifications for Road and Bridge Construction" that was referred to in the City's advertisement.
¶ 4. During the regular board meeting on February 13, 1996, the City received and opened nine sealed bids on the construction project. The four lowest bids were as follows: (1) Lampkin Construction, $1,067,735.65; (2) Prentiss Corporation, $1,099,476.00; (3) Thompson Tree and Spraying, $1,172,366.40; and (4) Parker Construction, $1,178,430.90. The Board of Aldermen first permitted the City Engineer to evaluate the bids. He recommended that the Board award the contract to Lampkin Construction, contingent upon the approval of the Mississippi Department of Transportation and the Federal Highway Administration. The Board voted to accept the engineer's recommendation and award the contract to Lampkin Construction.
¶ 5. The following day, Parker Construction mailed a letter to the Mayor and Board of Aldermen of Natchez protesting the award of the contract to Lampkin Construction. Parker Construction alleged that the bids submitted by Lampkin Construction, Prentiss Corporation, and Thompson Tree and Spraying were non-responsive under Section 102 of the Standard Specifications. Parker Construction contended that the three firms failed to file a required "Prequalification of Bidders" statement, listing persons authorized to bind the company on all matters, as set forth in Section 102.01 of the Standard Specifications. Parker Construction asserted that the City should award it the contract since the firm submitted the lowest fully responsive bid.
¶ 6. On February 20, a week after the bids were received, Parker Construction demanded that the City rescind its acceptance of Lampkin's bid and accept its bid. The City Attorney responded to Parker Construction's letter and also advised the Board of Aldermen that the award of the contract to Lampkin Construction was proper. On February 27, Parker Construction filed a complaint for injunctive and other relief in the chancery court. The chancellor concluded that Parker Construction "has or had, depending on how the facts developed, a plain, adequate, speedy and complete remedy at law" under Mississippi Code Section 11-51-75. The suit was dismissed.
¶ 7. On March 8, 1996, Parker Construction requested that the City reconsider the award of the contract to Lampkin Construction. Parker asserted that it would file a bill of exceptions in the circuit court within ten days of the execution of the contract with Lampkin Construction. After receiving approvals from the Mississippi Department of Transportation and the Federal Highway Administration, the City executed a construction contract with Lampkin Construction on April 11, 1996. Parker Construction then filed a bill of exceptions in the Circuit Court of Adams County. While the brief submitted by the City alleged that the bill of exceptions was not filed until April 22, Parker Construction argued that the bill was filed on April 19. The record contains the front page of a bill of exceptions stamped and dated April 19 and another bill of exceptions stamped and dated April 22.
¶ 8. The circuit court concluded that Parker Construction timely filed its bill of exceptions and that it had personal and subject matter jurisdiction over the matter. The court found that the City awarded the construction contract to the lowest and best bidder. Additionally, the court held that the City's decision to award the contract to Lampkin Construction was neither arbitrary nor capricious. Parker Construction appeals.

DISCUSSION
¶ 9. We first address the trial court's subject matter jurisdiction and the timeliness of the action. During the hearing, the City asserted that Parker Construction failed to file a bill of exceptions within the ten day appeal period contemplated by statute. Miss.Code Ann. § 11-51-75 (1972). The statute provides, in part, that "[a]ny person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities... may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision ... in a *674 bill of exceptions...." Id. The City alleged that the ten day period for an appeal of the Board's decision commenced on February 13 when the Board awarded the contract to Lampkin Construction. Parker Construction argued that the Board only contingently awarded the contract on February 13. Thus the appeal period commenced on April 11 when the Board received the requisite approvals from the Mississippi Department of Transportation and the Federal Highway Commission. Until the Board finalized its decision and executed the contract with Lampkin Construction, Parker Construction alleged that there was not a decision of the Board from which to appeal.
¶ 10. The supreme court remanded a similar case where the trial court based its decision to dismiss a bill of exceptions on the mistaken belief that it was without jurisdiction. Garrard v. City of Ocean Springs, 672 So.2d 736, 739 (Miss.1996). After the Ocean Springs City Council voted to transfer control of an American Legion Hut to the Park Commission, several concerned landowners filed a bill of exceptions in the circuit court. Id. at 737. Although the trial court dismissed the bill, the supreme court concluded that a party aggrieved by an act of a county or municipality may appeal under Section 11-51-75 where the city council finally disposed of all issues. Id. at 738. The court compared the carried motion to transfer the hut with an earlier, unsuccessful motion that conditioned and stayed the disposal of the hut until the resolution of a pending case before the court. Id. at 739. The court held that the carried motion differed from the unsuccessful motion in that it was a clear and unambiguous mandate, and thus a final decision of the council. Id.; see also City of Oxford v. Inman, 405 So.2d 111, 114 (Miss. 1981) (holding that bill of exceptions was timely filed on June 13 even though Board voted orally to reclassify property on May 6 because rezoning ordinance was not effective until written, signed, and formally adopted on June 3).
¶ 11. Parker Construction had no right to appeal until the Board had a final decision. Approval was needed from the State Department of Transportation and from the Federal Highway Commission. Had either of these two governmental agencies declined to approve the award of the contract to Lampkin Construction, there would have been nothing to appeal. The ten day appeal period did not commence until April 11 when the City executed the contract with Lampkin Construction.
¶ 12. We recognize the potential danger that certain formal or ceremonial actions by a county or municipality may escape the detection of would-be litigants. However, that did not occur here. Parker Construction requested that the Board promptly notify it if the contract was executed with Lampkin Construction. The City Attorney complied by telling Parker Construction once the City entered into the contract. Although the record contains the first page of a bill of exceptions filed within the ten day appeal period on April 19 and another bill of exceptions filed outside the appeal period on April 22, there is nothing to indicate that the first bill contained a defect or that it was not valid. The trial court properly concluded that it had subject matter jurisdiction and that Parker Construction timely filed its bill of exceptions.
¶ 13. Before proceeding to address Parker Construction's assignment of error, we must also determine the scope and content of the present record. Parker Construction filed a bill of exceptions setting forth the pertinent facts on April 19, 1996. Among other things, the bill of exceptions stated that "[o]f the four lowest bids, Parker was the only bidder to submit a Prequalification statement to the City of Natchez as a part of its bid." The bill was signed by Larry Brown, Mayor and President of the Board of Aldermen. The Board did not object to the bill of exceptions.
¶ 14. However, immediately prior to the commencement of the hearing on May 31, 1996, the City filed an amended bill of exceptions that was not signed by Parker Construction. The amended bill contained excerpts from the bids submitted by both Lampkin Construction and Parker Construction and a copy of the minutes from the February 13 Board meeting. A copy of a purported Prequalification Statement submitted by Lampkin Construction was included *675 in the excerpts. The City also attempted to introduce into evidence an affidavit from David Gardner, the City engineer. The affidavit stated that Gardner had reviewed the bids submitted for the project and that the bid from Lampkin Construction actually had contained a Prequalification Statement. Parker Construction objected to the amended bill of exceptions and to the introduction of the affidavit. The trial court permitted the affidavit to be marked for identification but refused to allow it into evidence. The court proceeded based on the earlier bill of exceptions.
¶ 15. The amended bill of exceptions submitted by the City is in significant variance with the original bill presented by Parker Construction. During the hearing, the attorney representing Parker Construction stated that he had "spent an awful lot of time drafting [the] Bill of Exceptions and going back and forth with [the City Attorney] to be sure that it was in proper form...." Furthermore, he alleged that "there didn't seem to be any issue, any dispute that Parker was the only one that had filed this pre-qualification statement." Parker Construction's cause of action rests on Lampkin Construction not having filed a Prequalification Statement. Parker repeatedly asserted that the three lower bidders failed to file a statement, the City never contested the matter. Rather, the City argued that potential bidders were not required to submit a Prequalification Statement or that such failure to comply was a minor irregularity that the City could waive or the bidder could subsequently correct. The trial court commented at the beginning of the hearing that "[t]here doesn't seem to be any dispute about the fact that [Parker Construction] submitted such a form with [its] bid. That the other bidders had no such form with their bids." No objection or clarification was made by the City.
¶ 16. When an appropriate official deems incorrect the bill of exceptions presented to him, the official is under an implied duty to point out the alleged errors "so that the aggrieved part[y] might have an opportunity to amend the [bill], and then to sign the same as corrected." Reed v. Adams, 236 Miss. 333, 111 So.2d 222, 225 (1959); Gill v. Woods, 226 So.2d 912, 919 (Miss.1969). Parker Construction embodied the facts and the decision of the Board in its bill of exceptions. The President of the Board of Aldermen signed the bill without any objection.
¶ 17. In Stewart v. City of Pascagoula, 206 So.2d 325, 326 (Miss.1968), the city council adopted an ordinance that authorized the City to assume control of a water and sewage system. After the aggrieved parties presented the mayor with a bill of exceptions, the mayor signed the bill but specifically pointed out in his certificate four important omissions from the bill. Id. at 327. On appeal, the supreme court concluded that "even though the certificate of the Mayor pointed out in great detail the specific omissions from the bill of exceptions, it was not amended in any way, and the appeal to the circuit court was on the bill of exceptions as originally drawn." Id. at 327-28.
¶ 18. The attorney representing Parker Construction stated that he had reviewed and revised drafts of the bill of exceptions before the final version of the bill was prepared and presented to the appropriate official. Contrary to the facts in Stewart, both parties signed the original bill of exceptions without any objection. After Parker Construction and the City agreed upon the bill of exceptions, the City attempted unilaterally to change the record on the day of the hearing. Parker Construction objected and refused to sign the alteration of the bill. The trial court noted that it was hearing the case as an appellate court with the record "made below." That was correct. The original bill of exceptions filed by Parker Construction and signed by the City is the operative one.
¶ 19. Parker Construction contends that the City impermissibly waived Lampkin's failure to comply with a mandatory bidding requirement. The following language which appeared in the City's advertisement for bids is key: "Bidders are hereby notified that award will not be made to any bidder submitting a proposal involving omissions or irregularities outlined in Section 102 of the 1990 Edition of the Standard Specifications for Road and Bridge Construction...." The project manual published by the City in connection with the construction *676 project incorporated the Standard Specifications. Consequently, Parker Construction argues that the three lower bidders failed to file a Prequalification Statement as required by Section 102.01 of the Standard Specifications.[1] By accepting Lampkin Construction's bid, Parker Construction alleges that the City improperly waived an express term of the bid invitation.
¶ 20. The City responds that its award of the contract to Lampkin Construction was neither arbitrary nor capricious because there was no such prequalification requirement for bidders submitting proposals on the project. The City asserts that the advertisement's reference to Section 102 incorporated Section 102.07, entitled Irregular Proposals, and not Section 102.01.[2] Alternatively, the City alleges that if there was a prequalification requirement, Lampkin Construction can comply with the requirement after the opening of the bids. Relying on several state attorney general opinions, the City contends that Lampkin's failure to comply did not affect the price, quality or quantity of the bid, and thus the omission was a minor irregularity that the City could waive.
¶ 21. The context of the words "omissions or irregularities outlined in Section 102" is controlling. The omissions or irregularities to which the advertisement is referring are the proposals set forth under Section 102.07, entitled Irregular Proposals (see footnote 2 below). The language of Section 102.07 supports the City's assertion that it intended to incorporate only that portion of Section 102. Section 102.07 enumerates various reasons that a bid may be considered irregular and rejected. Although the provision in the advertisement could have been clarified to remove any doubt, we conclude that a reasonable reading of the advertisement directs a potential bidder, and this Court, to the proposals considered irregular under Section 102.07.
¶ 22. However, Parker Construction next contends that Section 102.07 itself required a Prequalification Statement to be filed. Parker alleges that under Section 102.07(f) bidders had an obligation to file the necessary affidavits and certificates and to furnish a proposal guaranty. Subsection (f) states that a bid is irregular and may be rejected due to a bidders failure to execute required certificates. While the City argues that the Prequalification Statement is not referenced on the bidder checklist or the Instructions to Bidders, the first instruction in the City's project manual states that proposals shall be made on the forms provided. Section 102.06 of the Standard Specifications also provides that the "bidder shall submit his proposal upon the forms furnished by the [City]...." Section 903 of the project manual contained the forms entitled Partnership Certificate and Corporate Certificate which requested the name of the individual authorized to submit a proposal and bind the partnership or corporation. That is the missing prequalification statement. Therefore we agree with Parker that the Standard Specifications and the City's project manual required prospective bidders to submit a Prequalification Statement with the proposals.
*677 ¶ 23. Though the bidders had this obligation, the introductory language of Section 102.07 grants the City some discretion. The Section provides that "[p]roposals will be considered irregular and may be rejected for the following reasons ...." (emphasis added). In the consideration of proposals outlined in Section 103.01, the City reserved the right "to reject any or all proposals, to waive technicalities or to advertise for new proposals." Additionally, the Bidder Check List stated that the "[f]ailure to complete all of the applicable requirements may be cause for the proposal to be considered irregular." (emphasis added). Thus, the question for this Court is whether the City could waive Lampkin Construction's failure to file a Section 102.01 Prequalification Statement as required under Section 102.07.
¶ 24. The supreme court recognized the following purposes of competitive bidding: "to secure economy in the construction of public works and the expenditures of public funds for materials and supplies needed by public bodies; to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence in the procurement ... and to promote actual, honest, and effective competition to the end that each proposal or bid received and considered for the construction of public improvement... may be in competition with all other bids upon the same basis, so that all such public contracts may be secured at the lowest cost to taxpayers." Telcom Sys., Inc. v. Lauderdale County Bd. of Supervisors, 405 So.2d 119, 120 (Miss.1981) (citing Annotation, Requirement that Public Contract be Awarded on Competitive Bidding as Applicable to Contract for Public Utility, 81 A.L.R.3d 979, 981-82, 1977 WL 45847 (1977)).
¶ 25. The absence of Lampkin Construction's Prequalification Statement did not alter or destroy the competitive bidding process. Lampkin did not receive an advantage or benefit over the other bidders. The failure to file a list of individuals authorized to bind the company did not affect the price, quality, or quantity of its bid. Additionally, there was no opportunity for fraud or favoritism. The City's waiver of the Prequalification Statement did not prejudice the rights of the other bidders or the public. Consequently, we find that the trial court did not err in concluding that the City's decision to award the contract to Lampkin Construction was neither arbitrary nor capricious. While we hold that the City could waive the Section 102.01 Statement required under Section 102.07, we hasten to reiterate that neither a board of supervisors nor the municipal authorities has unbridled discretion. Any deviation from the bidding requirements that affects the integrity of the competitive process is beyond the discretionary power of the county or municipal authorities.
¶ 26. In reviewing Parker Construction's assignment of error, we recognize that this Court entertains appeals to determine whether the actions of an administrative agency were: (1) unsupported by substantial evidence; (2) arbitrary or capricious; (3) beyond the power of the agency to make; or (4) in violation of the statutory or constitutional right of the complaining party. Board of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). Although Parker alleges that the City's award of the contract to Lampkin Construction was beyond its powers rather than arbitrary or capricious, we do not find that the City's waiver of the required certificate was beyond the municipality's decision-making authority. As discussed above, the City had the discretion to determine whether Lampkin's proposal sufficiently complied with the bid invitation. The City waived the technical defect in Lampkin's bid, and accordingly, some degree of deference must be given to the decision of the governing body. Absent any evidence that the City's decision was arbitrary or capricious, we affirm the trial court's finding that the City awarded the construction project to the lowest and best bidder.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
NOTES
[1] 102.01Prequalification of Bidders. Prospective bidders will be required to file with the Department a list of persons authorized to bind the company in all matters. Other information may be required from time to time before issuing proposals.

* * * * * *
The City's project manual provided that under Section 904NOTICE TO BIDDERS NO. 4-V the term "City of Natchez" should be substituted for the term "Department".
[2] 102.07Irregular Proposals. Proposals will be considered irregular and may be rejected for any of the following reasons:

(a) If the proposal is on a form other than that furnished by the Department, or if the form is altered or any part thereof is detached.
(b) If there are unauthorized additions, conditional or alternative bids, or irregularities of any kind which may tend to make the proposal incomplete, indefinite, or ambiguous as to its meaning.
(c) If the bidder adds any provisions reserving the right to accept or reject an award, or to enter into a contract pursuant to an award.
(d) If the proposal does not contain a unit price and extension for each pay item. (Except in the case of alternate pay items and when the unit of measurement is lump sum.)
(e) If the proposal, Section 905, does not contain acknowledgement of receipt and addition to the proposal and contract documents of all addenda issued prior to opening of bids.
(f) Failure to execute required affidavits, certificates, etc., and furnish proposal guaranty.