ROBERTS, J.,
for the Court:
¶ 1. Today’s case requires us to carefully consider the distinction between responsible bidders and responsive bids in the public-construction-contract arena. In general parlance, a responsible bidder is one who meets the appropriate and lawful qualifications to bid on the invitation. A responsive bid, on the other hand, is a bid that appropriately responds to the specifications of the invitation. Panola Construction Co., Inc. (Panola) and Murphy & Sons, Inc. (Murphy) claim the DeSoto County Board of Supervisors (Board) impermissi-bly and unlawfully combined these two competing concepts.
¶ 2. In response to the Board request for bids on the construction of a new jail facility, Panola and Murphy submitted the two lowest bids, with Murphy’s bid being the lowest. However, the Board voted to award the contract to Flintco, LLC (Flint-co), the third lowest bid submitted. Murphy and Panola filed an appeal in the DeSoto County Circuit Court of the Board’s decision to award Flintco the contract. They filed a bill of exceptions with the circuit court on July 20, 2011. On November 16, 2011, the circuit court entered an order dismissing Murphy and Pa-nola’s appeal and affirming the Board’s decision. The current appeal ensued.
FACTS AND PROCEDURAL HISTORY
¶ 3. In April 2011, the DeSoto County Board of Supervisors published an advertisement seeking bids for construction of a new jail facility. Seven companies submitted bids, and all bids were presented to the Board. Of the seven bids, Murphy *89 had the lowest bid at $13,563,900, followed by Panola at $13,718,000, and then Flintco at $13,847,000. Murphy’s bid was $283,100 less than Flintco’s bid. The remaining bids exceeded Flintco’s bid. Flintco protested Murphy’s and Panola’s bids because their bids did not conform to the bid specifications. Specifically, Flintco argued that both Murphy’s and Panola’s bids did not contain two separate successful correctional-facility projects valued at a minimum of eight million dollars and completed within the last five years as explicitly required in the bid specifications.
¶ 4. At its June 6, 2011 meeting, the Board heard from Vanessa Lynchard, the director of administration and procurement, regarding the jail-facility bids. Lynchard presented the bids and informed the Board of Flintco’s protest. According to Lynchard, Flintco’s protest had merit, and it was her recommendation “that the bids of [Murphy] and [Panola] be considered as non-responsive and not eligible for a bid award.” She added that “in her opinion, if [DeSoto] County [was] to accept the bid of a company that did not meet the bid specifications, it would be unfair to the companies that did not bid because of the bid requirements and to those bidders who did qualify by having the required experience.” Ultimately, the Board awarded Flintco the contract because Murphy’s and Panola’s bids “were not in compliance with the bid specifications and [could not] be considered for failing to meet the jail specifications[,]” and Flintco’s bid was “the lowest and best bid for the construction of the DeSoto County Jail Facility.”
¶ 5. Murphy and Panola appealed the Board’s decision to the circuit court. After reviewing the entire record and briefs and hearing arguments from counsel, the circuit court found “that the decisions of the [Board] to award the contract to build the DeSoto County Jail Facility to [Flint-co], and to consider the bids of Murphy and Panola as non-responsive, were not arbitrary, caprieious[,] or unreasonable, and are supported by substantial evidence.” The circuit court dismissed Murphy and Panola’s appeal and affirmed the Board’s decision.
¶ 6. Feeling aggrieved, Murphy and Pa-nola executed the current appeal. They raise the following four issues:
I. Whether, in the absence of enabling legislation, Mississippi state agencies and local governments can mandate particular prior construction experience in order for a contractor to be eligible to bid on public works.
II. Whether, in the absence of statutory authority, Mississippi state agencies and local governments have the legal authority to pre-qualify public works contractors to bid on public projects.
III. Whether Mississippi state agencies and local governments can substitute their judgment concerning qualification of public works contractors when contractors have already been certified as to qualifications by the Mississippi State Board of Contractors.
IV. Whether Mississippi state agencies and local governments can substitute their judgment concerning the “responsibility” of public works contractors where contractors have already been certified as “responsible” by the Mississippi State Board of Contractors.
STANDARD OF REVIEW
¶ 7. When reviewing a decision of a county board of supervisors, this Court applies the same standard of review that is applied in appeals from the decisions of an administrative agency. Ryals v. Bd. of Supervisors of Pike County, 48 So.3d 444, *90 447 (¶ 11) (Miss.2010) (citing A & F Props., LLC v. Madison County Bd. of Supervisors, 983 So.2d 296, 299-300 (¶ 6) (Miss.2006)). A county board of supervisors decision relating to questions of law or statutory interpretation receive a de novo review.[1] Id. at 448 (¶ 11). However, a county board of supervisors decision will not be disturbed unless it “was unsupported by substantial evidence; was arbitrary or capricious; was beyond the board’s scope or powers; or violated constitutional or statutory rights of the aggrieved party.” Id. at 447-48 (¶ 11).
ANALYSIS
¶ 8. This case requires us to determine whether the Board’s request that bidders provide a list of prior jail-construction experience amounted to an impermissible prequalification of bidders and whether the Board found Murphy’s and Panola’s bids to be non-responsive.
I. Prequalification of Bids
¶ 9. Murphy and Panola first argue that the Board included a prior-experience requirement in its bid specifications that amounted to an unreasonable prequalification of bidders. At issue is the following language requiring bidders to “[pjrovide [a] listing of prior construction experience with references on successful correctional facilities projects within the last [five] years having a minimum construction contract amount of eight[-]million dollars ... each for no less than two ... separate projects.... Failure to do so may be cause for rejection.”
¶ 10. Murphy and Panola acknowledge that Mississippi Code Annotated section 31-7-13 (Supp.2012) governs the bidding requirements and process for awarding public contracts. The competitive bidding process for public contracts is in place for the following purposes:
to secure economy in the construction of public works and the expenditures of public funds for materials and supplies needed by public bodies; to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence in the procurement^] and to promote actual, honest, and effective competition to the end that each proposal or bid received and considered for the construction of public improvement may be in competition with all other bids upon the same basis, so that all such public contracts may be secured at the lowest cost to taxpayers.
J.H. Parker Constr. Co. v. Bd. of Aidermen of Natchez, 721 So.2d 671, 677 (¶ 24) (Miss.Ct.App.1998) (quoting Telcom, Sys., Inc. v. Lauderdale County Bd. of Supervisors, 405 So.2d 119, 120 (Miss.1981)). Murphy and Panola further agree that the Board has discretion to consider the following factors, in addition to money, when determining the lowest and best bid: the honesty and integrity of the bidder; the skill and business judgment of the bidder under section 31-7-13; the experience and the facilities of the bidder; previous conduct of the bidder under other contracts; the quality of previous works of the bidder; and the pecuniary ability of the bidder. Parker Bros. v. Crawford, 219 Miss. 199, 209, 68 So.2d 281, 285 (1953).
¶ 11. While recognizing these factors are permissible to consider, Murphy and Panola submit that section 31-7-13 “does not allow for prequalifying bidders based on arbitrary levels of prior experience.” According to them, possessing a certificate *91 of responsibility from the Mississippi Board of Contractors sufficiently prequali-fies bidders to assuage the Board’s fear of awarding the contract to an unqualified bidder. Additionally, Murphy and Panola argue that the prior-experience requirement violated the purposes of the compete tive bidding process by significantly narrowing the pool of qualified bidders, which ultimately led to increasing the cost of the project for the taxpayers. Lastly, Murphy and Panola cite to a recent amendment to section 31 — 7—13(d)(iii) allowing prequalifi-cation of bids on restoration projects of Mississippi landmarks to argue that pre-qualification of bids in other projects is not authorized by statute.
¶ 12. We conclude that the prior-experience requirement in the bid solicitation, under the facts of this case, was not an impermissible prequalification, and the Board’s decision to include the requirement was neither arbitrary or capricious nor violated a statutory right of Murphy or Panola. Therefore, this issue is without merit.
¶ 13. First, there is nothing in the record to indicate that the Board’s decision to include a prior-experience requirement violated any of the purposes of the competitive bidding process. Before drafting the bid specifications and issuing a request for bids, the Board thoroughly researched jail construction through the DeSoto County Jail Committee and an independent jail consultant. It was at the recommendation of the Jail Committee and jail consultant that the Board included the prior-experience requirement. The requirement also requested experience in the construction of jails exactly half as expensive as the jail project was expected to be. It is apparent from the record that the Board was keenly interested in bidders who had recently demonstrated a clear ability to properly and successfully construct a complex, mul-ti-million dollar adult jail facility. The decision to" include this requirement was clearly not arbitrarily done, but was thoughtfully researched. Additionally, the prior-experience requirement was not unreasonably restrictive to bidders, since four of seven bidders qualified under the requirement. The Board received all the bids submitted, including Murphy’s and Panola’s bids, opened and presented the bids, and clearly considered the bids before awarding the contract to Flintco. There was no evidence presented that any other bids were refused on the basis that they did not meet the prior-experience requirement. ■ Each bid that was submitted, regardless of prior experience, was presented for consideration. Lastly, the record indicates that Flintco’s bid was $283,100 more than Murphy’s bid, but this amount was only two percent different based on the total project. There is not a significant enough difference between the bids for this Court to determine that the acceptance of Flintco’s bid destroyed the competitive bidding purpose of not unnecessarily increasing the cost on the taxpayers. Thus, the requirement did not act as a prequalifier as Murphy and Panola assert.
¶ 14. Further, the language of the pri- or-experience requirement left discretion to the Board to consider bids that did not conform to the bid specifications. The requirement stated that “[fjailure to [include prior experience] may be cause for rejection.” (emphasis added). In J.H. Parker Construction Co., 721 So.2d at 675 (¶ 19), this Court was asked to determine whether the Natchez Board of Aldermen improperly awarded a public construction contract to a bidder who failed to comply fully with the bid specifications. This Court found that the aldermen’s waiver of the bid specifications did not destroy the competitive bidding process and that the aldermen had discretion to determine *92 whether the bidder’s proposal sufficiently complied with the bid specifications. Id. at 677 (¶ 25). The decision to waive the bidder’s failure to include a prequalification statement with the bid was within the aldermen’s discretion. Id. at (¶ 26). Just as the aldermen in J.H. Parker Construction Co. had discretion to waive the requirement in the bid specifications and accept a bid not in total conformity with the bid specifications, so does the Board, in the current case, have discretion to enforce the bid specifications as written.
¶ 15. For the foregoing reasons, we find that the Board’s actions were not arbitrary or capricious, and that it did not violate a statutory right of Murphy or Panola. This issue is without merit.
II. Responsive or Responsible Bids
¶ 16. Murphy and Panola next argue that Mississippi Code Annotated section 19-18-11 (Rev.2012) required the Board to accept the lowest responsible bid. Therefore, they argue the Board’s decision to award the contract to Flintco was unlawful because Murphy’s bid was the lowest bid that fully complied with the bid specifications. In their brief, the primary argument on this issue is that “an honest determination that a bidder’s bid, though the lowest, is not the best, will ordinarily control, [but] the law does not permit the arbitrary rejection of bids for public work nor arbitrary preference of one bid over another which is lower, or an arbitrary classification of bidders.” They submit that the main reason the Board rejected their bids was that both bids were non-responsive to the bid specifications. They argue that there is an important distinction between the terms “responsiveness” and “responsibility,” and the Board’s issue was not with their responsiveness to the bid specifications as much as their responsibility as contractors to properly complete the project.
¶ 17. First, we find that section 19-13-11 is not applicable because it was enacted to guide how a Board may award contracts during a vacation or recess. Fúrther, as we stated above, Murphy and Panola conceded that section 31-7-13 governs the bidding requirements and process for awarding public contracts. Section 31-7-13 more aptly addresses the bidding process and procedures for public construction contracts; therefore, we will apply the language from this statute, which requires the contract to be awarded to the “lowest and best bidder,” and not the language from section 19-13-11, which states the Board shall accept “the lowest responsible bid.” Also described above, Murphy and Panola concede that the Board had discretion to consider other factors when determining the lowest and best bid and that one of these factors is the prior experience of the bidder. Under section 31-7-13, the Board had the discretion to consider prior experience when awarding the contract, and the Board used its discretion in awarding the contract to Flintco.
¶ 18. After a thorough review of the record, including a reading of the minutes from the Board’s meeting, we do not find that the Board primarily rejected Murphy’s and Panola’s bids due to them being non-responsive. During its June 6, 2011 meeting, the sole mention of Murphy’s and Panola’s bids being non-responsive was made by Director of Administration and Procurement Vanessa Lynchard when she recommended “to the Board that the bids of [Murphy and Panola] be considered as non-responsive and not eligible for a bid award.”
¶ 19. When making its decision to accept Flintco’s bid, the Board stated: “[B]ased upon the recommendation of the DeSoto County Jail Committee and the *93 Director of Procurement to find that based on the reasons discussed, and due to the failure of [Murphy and Panola] to meet important and material bid specifications, the lowest and best bid for the construction of the DeSoto County Jail Facility was the bid submitted by Flintco.... ” We read this to mean that the Board considered a variety of factors, including that Murphy never submitted any documentation of pri- or experience and that Panola’s documentation of prior experience did not meet the prior-experience requirement, when making the decision to award the contract to Flintco.
¶ 20. We disagree with Murphy and Panola’s assertion that the Board’s decision was based on their non-responsiveness, and we find that it was primarily based on prior experience of the bidders. Therefore, we cannot conclude that the Board’s decision to award the contract to Flintco was arbitrary or capricious or that it violated a statutory right of Murphy and Panola. This issue is without merit.
¶ 21. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. BARNES AND JAMES, JJ., NOT PARTICIPATING.

. Murphy and Panola assert that the de novo standard is the appropriate standard of review for this Court to apply because whether the Board may prequalify bidders by requiring certain prior experience is a question of law.