PARKER BROS., et al. *v.* CRAWFORD, et al.

Dec. 7, 1953

No. 38997        45 Adv. S. 65        68 So. 2d 281

*J. Hoy Hathorn,* Louisville, for appellants.

*Livingston & Fair,* Louisville, for appellees.

ETHRIDGE, J.

This case involves the question of whether the appellee school trustees abused their discretion in finding that

Lundy Brothers, Inc., was the "lowest and best" bidder on a construction contract for an elementary school and cafeteria, and in thereby denying the contract to appellants.

In 1952 the citizens of the Louisville, Mississippi, Municipal Separate School District, the boundaries of which are coextensive with those of the City of Louisville, voted to issue approximately $340,000 of bonds for the construction of an elementary school and cafeteria. The Board of Trustees of the School District, appellees J. A. Crawford and four others, employed Johnson, Jones and Reynolds, architects of Starkville, Mississippi, to prepare plans, blueprints and specifications for this project, which upon completion were approved by the Board. The Board then published notice in a newspaper inviting bids for the construction work on five separate items. One of these items was "all labor and materials required to complete the plumbing, heating and ventilating" of the elementary school and cafeteria. Bids were to be received on November 4, 1952.

Lundy Brothers, Inc., of Philadelphia, Mississippi, (hereinafter referred to as Lundy), made a bid for plumbing, heating and ventilating of $23,600. Appellants Parker Brothers, a partnership composed of Frank and James Parker, (hereinafter referred to as Parker), bid on the same item $23,282, which was $318 less than the bid of Lundy Brothers, Inc. Both tendered sufficient performance bonds. These bids, along with others, were opened by the Board of Trustees on November 4, 1952, but at that time the Board announced that it would not act on any bids until its next meeting on November 10th. During the interval of time between November 4th and 10th several of the trustees made some inquiry and investigation as to the respective abilities of Parker and Lundy to perform the contract. The Board also requested the architects to get information concerning the experi-

ence, financial responsibility and other qualifications of these two bidders.

Dr. J. A. Crawford, president of the Board, testified that he and the other trustees asked about Parker as well as about Lundy; that they had hoped that they could get some recommendation on Parker but that they never did get any that they felt they could trust on a job of this size; that it was the Board's opinion that Parker could not do the job, and that the Board was afraid to risk them doing it. Crawford said that during the period before the bids were acted upon he left word for the Parkers to contact him, but that they did not; that they were at liberty at any time to present their qualifications to the Board; that the Board was advised by its architects that Lundy was well qualified from experience and financial responsibility, but that Parker was deficient on both of these factors. Crawford talked to several people in the community, including a plumber, about Parker. Most people had not heard "too much about them." He said that the Board felt it was its duty to get the best plumber it could get, and that of course it relied to some extent upon its architects' recommendation. Before the bids were acted upon, the Board had information that the Parkers had never had a contract of this magnitude, acting for themselves and not as employees; that their experience consisted only as employees of other people. In the Board's opinion the bid of Lundy was the lowest and best.

Roger Kilpatrick, also a member of the Board of Trustees, engaged in the building supply business in Louisville, testified that he knew the Parker brothers, who were born and reared in Louisville, but had been in Texas for around ten years before returning home shortly before making the present bid. He asked around Louisville about them and found that they had been working mostly on small jobs. He said that Parker never did try to qualify with the Board, and that he had told Frank Parker

that he hoped that they could qualify, but never did hear any more from him. He and the other members thought that Parker had too little experience as contractors on this type of job. Roger Allen and Bill Bennett, members of the Board, testified substantially to the same effect.

At the time the Lundy bid was accepted the members of the Board of Trustees had information from their architects and other sources that Lundy Brothers, Inc., was financially responsible and had had a large amount of experience in plumbing, heating and ventilating contracts similar to the one in question. There is no substantial dispute that Lundy was amply qualified to do the job, with a large staff of employees. There was some evidence that Lundy had some trouble on the plumbing in the Noxapater school, but the superintendent of that school testified that since Lundy had done repairs "it has been a good heating system." There was also some testimony with reference to plumbing by Lundy on the annex to the Winston County courthouse. It is not clear whether the Board knew of this alleged difficulty when it finally acted on the bid. Moreover, on that issue there was a dispute of fact as to whether the cause of the trouble was defective plumbing or other reasons, and that was for consideration by the Board and by the chancellor, which found against appellant's contention.

With this information before the Board and with the bids as previously stated, the Board met on November 10, 1952, and by order accepted the bid of Lundy, which was $318 higher than that of Parker. That order recited in part as follows: "the Board having made some personal investigations of the reputation, experience, and ability of the various parties submitting the bids, and the Board finding that the Architects have made an extensive investigation as to the reputation and ability of the various bidders and the Board having received information, and being convinced that Parker Brothers who submitted a bid which is slightly lower than the bid of Lundy

Brothers, having had no experience as contractors, and that their experience in plumbing and heating installation consists of work done as employees only, and that they have had no experience in supervision of such installation, and after having a lengthy discussion of the bids designated Plumbing and Heating Contract 'B' the Board finds, and here adjudicates that the bid submitted by Lundy Brothers, Inc., of Philadelphia, Mississippi, in the sum of $23,600 is the lowest and best bid submitted, and on motion duly made, seconded and carried by this Board the bid of Lundy Brothers, Inc., in the amount of $23,600 is hereby accepted, . . . ''

Twenty days later, on December 1, 1952, Frank and James Parker, composing the partnership of Parker Brothers, brought this action in the Chancery Court of Winston County against appellees J. A. Crawford, et al., trustees of the school district, and H. C. Earhart, Sr., City Clerk of the City of Louisville. Another complainant, and appellant, is Jody Parker, brother of the other appellants, who joined as a ''taxpayer,'' but this is no taxpayer's derivative suit, since other taxpayers were not invited to join as complainants. The bill charged that appellants made the lowest and best bid; and that the Board abused its discretion in accepting the bid of Lundy and in not accepting that of appellants. Hence the bill prayed for an injunction prohibiting appellees from proceeding under the contract with Lundy, and for a mandatory injunction against the Board to compel it to execute the contract with appellants. It also sought to enjoin appellee city clerk from issuing any pay warrants to Lundy under the contract with the school trustees. Appellees filed an answer, and on December 16th a hearing was held with a large number of witnesses testifying.

The facts outlined above were presented to the court. In addition Frank and James Parker, appellants, testified. In brief, their testimony substantiated the information of the Board that they had not handled any prior

contracts of this size for themselves. But for several years Frank Parker had worked on a number of large plumbing contracts, while employed as a foreman for contractors in Corpus Christi, Texas; and James Parker had since 1947 done plumbing work while employed by Texas contractors, on several occasions as a foreman. Letters of recommendation from the Texas employers of appellants were introduced in evidence. But they admitted that this was the first large contract they had ever bid on for themselves. Appellants had returned to Louisville in 1952 shortly before they made this bid, and had been doing primarily residential plumbing. Appellants had very little financial resources, and had obtained a supplier from Meridian to indemnify their performance bond. None of the information testified to by the Parkers was submitted by them to the Board of Trustees. In fact, it appears that they made no effort to qualify themselves with the Board. On December 18th the chancery court denied the requested relief and dismissed the bill. It found that the Board before awarding the contract had made an investigation of appellants and of Lundy; that it had determined that the latter had the experience and financial responsibility to do the job; that Lundy was more experienced and in a better condition financially to do the job than were appellants; that appellants' experience on jobs of this type had consisted of services rendered as employees only; and that there was no abuse of discretion on the part of the Board, which was ''entirely justified in awarding the contract to Lundy Brothers, Inc., as the lowest and best bidder.''

The statute in question, Code 1942, Section 9027, as amended by Miss. Laws 1950, Chapter 292, Section 1, provides in part as follows: ''All boards of supervisors, boards of trustees of all school districts, the governing authorities of all municipalities, and any hospital commission operating a hospital either in the name of a municipality or county, or jointly between a county and

municipality, or between municipalities, shall purchase their supplies for public works, public buildings, and for public construction upon competitive bids, letting contracts therefor to the lowest and best bidder for periods of not more than twelve months in advance." Prior to the 1950 amendment this statute did not contain the above-quoted phrase "to the lowest and best bidder."

Legislation governing the letting of public contracts by public authorities variously require such contracts to be awarded to the "lowest bidder," "lowest responsible bidder," and the "lowest and best bidder." 43 Am. Jur., Public Works and Contracts, Section 42, says: "As a matter of fact, most statutes contemplate the letting of the contract to the lowest bidder only if he is a competent and responsible contractor having the facilities and the ability to execute the contract properly. Much litigation has arisen concerning the construction of these provisions relative to the bidder to whom the contract may or must be let and the discretion which may be exercised in awarding contracts. The 'lowest' bid may be determined by monetary standards with the dollar as the unit, but this is not so in determining the 'best' bid, or the 'responsible' bid; that question involves a number of other factors and elements.

"The bidder to whom a contract for public work is to be awarded under a provision that such contracts shall be let to the 'lowest responsible bidder' is one who is responsible and lowest in price on the advertised basis. Such a requirement does not compel the authorities to award a public contract to the lowest bidder who is financially responsible or who is able to produce responsible sureties. The term 'responsible' as thus used is not limited in its meaning to financial resources and ability. What the public desires is a well-constructed work, for which a lawsuit even against a responsible defendant is a poor substitute; and authorizations of this kind are held to invest public authorities with discretionary power

to pass upon the honesty and integrity of the bidder necessary to a faithful performance of the contract—upon his skill and business judgment; his experience and his facilities for carrying out the contract; previous conduct under other contracts; and the quality of previous work —as well as his pecuniary ability, and when that discretion is properly exercised the courts will not interfere. All matters bearing upon the likelihood that the contract will be promptly and efficiently performed bear upon the question of responsibility of bidders and may and should be considered in determining who is the lowest responsible bidder." To the same effect are 78 C. J. S., Schools and School Districts, Section 289, pages 1266-1267; 63 C. J. S., Municipal Corporations, Section 1157, pages 833-837.

■■■ There is but little dissent from the general rule that public boards and officials are vested with a sound discretion in making a determination as to who is the "lowest and best bidder," and their decision, when based upon an honest and reasonable exercise of the discretion thus vested in them, will not be interfered with by the courts. 43 Am. Jur., Public Works and Contracts, Section 44. However, such public authorities must always exercise a real discretion based upon facts reasonably tending to support their decision. The rule does not permit them to act arbitrarily. The award must be made reasonably, honestly, and in good faith, but when it appears that they have so acted, the courts will not interfere. Nevertheless, all else being equal, it is the duty of public authorities such as school trustees to accept the bid involving the least expenditure of public funds.

The few Mississippi cases dealing with this matter support those statements of principles. In Cooper v. Townsend, Supt. of Ed., 143 Miss. 108, 108 So. 273, (1926), the statute required competitive bids for contracts to transport school children, and provided that such contracts "shall be let to the lowest responsible

bidder." Cooper filed a petition for mandamus against the superintendent of education and the trustees of a school district in Montgomery County. It was charged that petitioner made the lowest bid submitted, but that nevertheless the board had not accepted petitioner's bid. The sustaining of a demurrer to the petition was affirmed on appeal. It was pointed out that the statute required the contract to be let to the lowest responsible bidder and expressly authorized the board to reject any and all bids; that the duty of the board was judicial in its nature, and that it was vested with discretion in determining the responsibility of bidders; that there "are many elements to be considered besides pecuniary ability"; and that the board's official discretion in the matter "cannot be controlled by mandamus." Apparently the decision was based largely upon the type of remedy sought,—mandamus. But the court recognized a reasonable discretion in the board. Cooper v. Townsend was followed in Hicks v. Oswalt, 137 So. 740 (Miss. 1931), and Baggett v. Hammond, 145 So. 338 (Miss. 1933).

In Bright v. Ball, 138 Miss. 508, 103 So. 236, (1925), the Court held that a school board had abused its discretion in awarding a contract for transportation of school children to a minor whose right leg had been amputated, where the statute provided for letting of the contract to the "lowest responsible bidder"; and that for a person in that condition to drive a school bus under the facts charged in the bill on demurrer was an abuse of the board's discretion. The Court quoted at length from authorities recognizing a reasonable discretion in a school board as to such bids, but it thought that this action was in excess of the board's powers. The bill sought an injunction in chancery, and by necessary inference the decision approved such a method of review of a school board's order accepting a competitive bid. Cf. Klyce v. Alcorn County, 192 Miss. 440, 6 So. 2d 298, (1942).

With these principles in mind, we do not think that the Board abused its duty to use a sound judgment in the light of the facts which it had before it at the time of the order of November 10th, or in view of the facts subsequently presented to the chancery court. Appellees are vested with a reasonable discretion in determining who is the lowest and best bidder, and have a serious and substantial responsibility to the public in making that determination. The chancery court found as a fact that the Board's decision was based upon an honest exercise of discretion and upon facts which amply supported their order. On this record we would not be warranted in reversing that action.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Lotterhos, JJ.,* concur.