# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-02122-SCT

*WILLIE NELSON d/b/a NELSON PLUMBING*
*COMPANY*

*v.*

*CITY OF HORN LAKE ACTING BY AND*
*THROUGH ITS BOARD OF ALDERMEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2006 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER SOLOP |
| | JOSEPH M. GIANOLA, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN D. PRICE |
| | BILLY C. CAMPBELL, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This appeal is taken from the DeSoto County Circuit Court's order affirming the City of Horn Lake's decision to reject Nelson Plumbing Company's lowest bid for construction on the Goodman Road Sanitary Sewer Improvements project. Because we find that the City of Horn Lake complied with Mississippi Code Annotated Section 31-7-13(d)(i), did not violate Nelson's due process rights, and did not act arbitrarily and capriciously in rejecting Nelson's lowest bid, we affirm.

FACTS

¶2. On June 1 and June 8, 2005, the Mayor and Board of Aldermen of the City of Horn Lake ("the City") advertised bids for the Goodman Road Sanitary Sewer Improvements project ("the Goodman Project"). The City required that bidders have a certificate of responsibility issued by the Mississippi State Board of Public Contractors and specified that the contract would be awarded to "the lowest responsive, responsible Bidder." Additionally, the City reserved the right to conduct an investigation of the bidders' capacity to perform the work and reserved the right to reject any bid if the City determined that a bidder could not carry out the obligations of the contract.

¶3. Willie Nelson d/b/a Nelson Plumbing Company ("Nelson") is a Mississippi sole proprietorship holding a valid certificate of responsibility for various classifications of work. Of the five companies that submitted bids for the Goodman Project, Nelson submitted the lowest bid in the amount of $2,294,035.50.[1] Nevertheless, on September 20, 2005, the City's Board of Aldermen unanimously voted to award the contract for the Goodman Project to Freeland and Lemm Construction Company ("Freeland"), who had submitted the second lowest bid at $2,298,761.62—an amount $4,726.12 higher than Nelson's bid.

¶4. The City justified its decision to award the contract to Freeland rather than Nelson on two grounds. First, the City cited nine complaints it had received about Nelson from corporate and municipal entities in Arkansas, Tennessee, and Mississippi. The complaints

---

[1] This is the amount used in the minutes from the City's September 20, 2005, meeting of the mayor and Board of Aldermen. Nelson had calculated his bid at $2,294,076.50, which was slightly higher than the City's calculation.

pertained to Nelson's conduct under prior contracts, as well as payment disputes with previous suppliers. Second, the City cited its own previous difficulties with Nelson in the construction of City Hall. The City stated that Nelson's failure to perform work according to contract specifications for the City Hall project resulted in delay and caused damages to the City and other contractors.

¶5. On September 22, 2005, Nelson submitted a letter to the mayor and city clerk protesting the City's decision to deny him the Goodman Project contract. Nelson stated that he had conformed to all the requirements of the bid documents, that he held a valid certificate of responsibility, and that the City had unlawfully awarded the contract to Freeland. On September 23, 2005, the City responded to Nelson's written protest by affirming its decision to award the contract to Freeland.

¶6. On September 26, 2005, Nelson submitted a supplemental protest. Nelson alleged that the City acted arbitrarily and capriciously in denying him the contract. Nelson also argued that he never had an opportunity to respond to suppliers' complaints of late payment or non-payment and, regardless, that such complaints should not have been considered by the City.

¶7. On September 29, 2005, Nelson filed a Notice of Appeal and Bill of Exceptions in the DeSoto County Circuit Court, appealing the City's decision to award the Goodman Project contract to Freeland. On April 10, 2006, Nelson filed a Motion to Compel, requesting that the circuit court order the mayor to sign the Bill of Exceptions. On May 8, 2006, the City filed its Designation of Appeal Record, which included its Corrections to the Bill of Exceptions that had been signed by the mayor on April 5, 2006.

3

¶8.   Oral arguments were heard in the DeSoto County Circuit Court before the Honorable Robert P. Chamberlin on November 16, 2006.  On December 1, 2006, the circuit court entered an order dismissing Nelson's appeal and affirming the City's decision.  Nelson filed a Notice of Appeal with this Court on December 12, 2006.

¶9.   Nelson raises seven issues on appeal, which we have consolidated into five: (I) whether the City violated Mississippi Code Annotated Section 31-7-13(d)(i) (Rev. 2005) in awarding the Goodman Project contract to Freeland and, if not, whether the City had the right to reject Nelson's bid for the reasons set forth in its Resolution #09-07-05; (II) whether the City violated Nelson's substantive and/or procedural due process rights; (III) whether the City acted arbitrarily and capriciously in reaching its decision to award the Goodman Project to Freeland rather than Nelson; (IV) whether the circuit court erred in excluding an Occupational Safety and Health Administration (OSHA) news release from the record; and (V) whether Nelson is entitled to lost profits and attorney's fees from the City and whether individual members of the Board of Aldermen may be held personally liable.  Because we find issues I through IV dispositive, we do not address issue V.

## STANDARD OF REVIEW

¶10.   The scope of review is limited when examining the actions of a municipal board. *Sunland Publ'g Co. v. City of Jackson*, 710 So. 2d 879, 881-82 (Miss. 1998).  Issues I, II, and IV are subject to a de novo standard.  For questions of law, a municipal board's decision is reviewed de novo. *See A&F Props., LLC v. Madison County Bd. of Supervisors*, 933 So. 2d 296, 300 (Miss. 2006).   A de novo standard is also applied to issues of statutory

4

interpretation. *Weiner v. Meredith*, 943 So. 2d 692, 694 (Miss. 2006) (citing *Austin v. Wells*, 919 So. 2d 961, 964 (Miss. 2006)).

¶11. Issue III is subject to an arbitrary-and-capricious standard of review. This Court will not set aside the action of the governing body of a municipality unless such action is "clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." *Sunland Publ'g Co.*, 710 So. 2d at 882 (citing *City of Jackson v. Capital Reporter Publ'g Co.*, 373 So. 2d 802, 807 (Miss. 1979)). An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. *Watkins v. Miss. Bd. of Bar Admissions*, 659 So. 2d 561, 568 (Miss. 1995). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion or . . . more than a 'mere scintilla' of evidence." *Wilkinson County Bd. of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007, 1010 (Miss. 2000) (quoting *Hooks v. George County*, 748 So. 2d 678, 680 (Miss. 1999)).

## DISCUSSION

**I.** **Whether the City violated Mississippi Code Annotated Section 31-7-13(d)(i) in awarding the Goodman Project contract to Freeland and, if not, whether the City had the right to reject Nelson's bid for the reasons set forth in its Resolution #09-07-05.**

**A.** **Mississippi Code Annotated Section 31-7-13(d)(i) (Rev. 2005).**

¶12. The City awarded the Goodman Project contract to the second-lowest bidder based on complaints about Nelson and his conduct under previous contracts. Nelson argues that the City's minutes failed to include "detailed calculations" specifying costs that would have been incurred had his lowest bid been accepted, including costs for additional supervision.

5

Nelson asserts that detailed, mathematical calculations are an objective requirement essential to protecting the integrity of the public procurement system. The City counters that the term "calculations" does not refer to numbers, but to the governing authority's deliberations in reaching its final decision.

¶13. Mississippi Code Annotated Section 31-7-13(d)(i) requires a city to place on its minutes detailed calculations and a narrative summary when accepting a bid other than the lowest bid submitted.

> If any governing authority accepts a bid other than the lowest bid actually submitted, it shall place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid.

Miss. Code Ann. § 31-7-13(d)(i) (Rev. 2005). The term "detailed calculations" in Mississippi Code Annotated Section 31-7-13(d)(i) requires, at least, that "the dollar amount of the accepted bid and the dollar amount of the lowest bid" be included in the governing authority's minutes.

¶14. Nelson's bid was not rejected on considerations to which "detailed calculations" are attributable, but for the reasons described under the "narrative summary." When awarding contracts, a governing authority may consider a bidder's "responsibility" concerning matters that relate to the prompt and efficient performance of a contract, including the bidder's honesty and integrity, skill and business judgment, experience and capability of performing the contract, conduct under previous contracts, and the quality of previous work. *Parker Bros. v. Crawford*, 219 Miss. 199, 208-09, 68 So. 2d 281, 284-85 (1953). When a lowest bid

6

is denied based upon such considerations, as in the subject case, there will most likely be little in the way of "detailed calculations" to include in the governing authority's minutes.

¶15. Because the City rejected Nelson's bid for reasons that cannot be reduced to "detailed calculations," the City's minutes provided the minimal, requisite "detailed calculations" pursuant to Mississippi Code Annotated Section 31-7-13(d)(i) by citing the dollar amounts of the lowest bid and the accepted bid.

**B.** **The City's right to reject Nelson's bid for the reasons set forth in its Resolution #09-07-05.**

¶16. The City's advertisement for bids stated that the contract would go to "the lowest responsive, responsible Bidder." The term "responsible" is not limited to financial resources and ability. *Id*. at 284. All matters that relate to a bidder's prompt and efficient performance of the contract are material to a bidder's "responsibility," including the bidder's honesty and integrity, skill and business judgment, experience and facilities for performing the contract, conduct under previous contracts, and the quality of previous work. *Id*. at 284-85.

¶17. Resolution #09-07-05, as incorporated into the City's minutes, stated that the City had decided not to award the Goodman Project contract to Nelson based on numerous complaints regarding his prior work and its own previous difficulties with Nelson in the construction of City Hall. These are appropriate considerations in determining the "responsibility" of a bidder. *See id*.

¶18. The City also reserved the right to investigate bidders "to determine the ability of the Bidder to perform the work," as well as the "right to reject any bid if the evidence submitted by or investigation of such Bidder fails to satisfy the [City] that such Bidder is properly

7

qualified to carry out the obligations of the Contract and to complete the work contemplated therein."

¶19.    Because the City's advertisement for bids allowed for consideration of bidders' "responsibility" and because the City also reserved the right to investigate bidders, we find that the City had the right to reject Nelson's bid for the reasons set forth in Resolution #09-07-05.

**II.    Whether the City violated Nelson's substantive and/or procedural due process rights.**

¶20.    Nelson argues that the City violated his constitutionally protected substantive and procedural due process rights. Nelson maintains that he acquired a property interest in the Goodman Project contract because he was the lowest, responsive bidder. Additionally, Nelson argues that the City violated his procedural due process rights by not affording him notice and a hearing.

**A.    Substantive due process.**

¶21.    For substantive due process to be implicated, there first must be a protected property interest. *University of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 536 (Miss. 2000). This Court has stated that a contract right constitutes an enforceable property interest. *Id*. (citing *Wicks v. Miss. Valley State Univ.*, 536 So. 2d 20, 23 (Miss. 1988)). However, federal constitutional law determines whether a property interest "rises to the level of a constitutionally protected interest." *Id*. (citing, *e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554, 1560, 56 L. Ed. 2d 30, 39 (1978)). The United States Supreme Court has defined "property" for the purpose of the due process clause as being

8

more than a unilateral expectation, but a "legitimate claim of entitlement." ***Bd. of Regents v. Roth***, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548, 561 (1972).

¶22.    Nelson argues that his property interest in the Goodman Project contract attached once he acquired status as the lowest bidder.  In arguing that he has an enforceable property interest in the Goodman Project contract, Nelson relies heavily upon ***Shepard v. City of Batesville***, 2007 U.S. Dist. LEXIS 1519 (N.D. Miss. January 8, 2007).  In ***Shepard***, the federal court for the Northern District of Mississippi found that Mississippi Code Annotated Section 31-7-13 gave the plaintiff a protected property interest in projects for which he was the lowest and best bidder.  ***Shepard***, 2007 U.S. Dist. LEXIS at 27.  However, ***Shepard*** is distinguishable from the facts of the subject case.  In ***Shepard***, the plaintiff actually had been awarded various contracts over a two-year period, but had been used for only one project. *Id*. ("[t]here is absolutely no question that the Plaintiff was awarded the contracts . . . ."). The City of Batesville had instead used alternate bidders without providing the plaintiff any notice or hearing as to why he had not received the jobs.  *Id*. at 27-28.

¶23.    In contrast to ***Shepard***, Nelson was never awarded the Goodman Project contract.  The City, in its advertisement for bids, reserved discretion to award the contract to "the lowest responsive, responsible Bidder" and determined that Nelson did not meet such criteria. Having never been awarded the Goodman Project contract, Nelson never had a "legitimate claim of entitlement" to such contract.  *See* ***Roth***, 408 U.S. at 577; ***Shepard***, 2007 U.S. Dist. LEXIS at 24-25 (citing ***Expert Masonry, Inc. v. Boone County***, 440 F.3d 336, 348 (6th Cir. 2006)(a constitutionally protected property interest in a public bid contract may arise by

9

being awarded the contract and then being deprived of it, or by the governing authority abusing its discretion in awarding the contract)).

¶24.    Because no property interest vested upon Nelson's status as the lowest bidder, we find that Nelson did not acquire a constitutionally protected property interest in the Goodman Project contract.  Therefore, we hold that the City did not violate Nelson's substantive due process rights.

### B.    Procedural due process.

¶25.    A two-step analysis is required in analyzing procedural due process claims: "(1) does the plaintiff have a property interest entitled to procedural due process protection; and (2) if yes, what process is due?" *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 985 (Miss. 2004) (citing *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 733 (S.D. Tex. 2002)).  If no constitutionally protected right is at stake, then procedural due process is not an issue.  *Miss. High Sch. Activities Ass'n, Inc. v. Coleman*, 631 So. 2d 768, 774 (Miss. 1994) (citing *Miss. High Sch. Activities Ass'n, Inc. v. Farris*, 501 So. 2d 393, 396 (Miss. 1987)).

¶26.    Because Nelson had no constitutionally protected right in the Goodman Project contract, we find that procedural due process is not invoked.  *See id*.  Nevertheless, Nelson received the requisite procedural due process provided under Mississippi law.

¶27.    Mississippi bid laws do not require a hearing when a governing authority rejects a lowest bid. Rather, Mississippi Code Annotated Section 31-7-13(d)(i) requires the governing authority's minutes to provide "detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid." Miss. Code Ann. § 31-7-13(d)(i)

10

(Rev. 2005). If a party remains dissatisfied with the governing authority's decision, Mississippi Code Annotated Section 11-51-75 sets forth the procedure by which an aggrieved party such as Nelson may appeal the decision. Miss. Code Ann. § 11-51-75 (Rev. 2005).

¶28. Nelson attempts to contrast the process afforded him with the process afforded the lowest bidder in *Parker Brothers*. In *Parker Brothers*, the school board made efforts to contact the lowest bidder prior to the board's decision to accept the second-lowest bid. *Parker Brothers*, 68 So. 2d at 282. Additionally, the board noted that the lowest bidder had been free "at any time to present their qualifications to the Board; . . . ." *Id*. Yet the lowest bidder never actually contacted the school board and no hearing was conducted prior to the board's decision. *Id*. at 282-83. Even if a hearing had been held prior to the board's decision, such a hearing is not required under Mississippi law. *See* Miss. Code Ann. §§ 11-51-75, 31-7-13(d)(i) (Rev. 2005).

¶29. Accordingly, we find that Nelson received the requisite procedural due process under Mississippi law.

### III. Whether the City acted arbitrarily and capriciously in reaching its decision to award the Goodman Project to Freeland rather than Nelson.

¶30. Nelson makes three arguments that the City acted arbitrarily and capriciously in denying him the Goodman Project contract: first, that the City engaged in a "witchhunt" to deny him the Goodman Project contract and did not investigate Freeland or other bidders; second, that the City improperly considered his conduct under a previous contract with the

11

City which dated back five years;[2] and finally, that the City unlawfully considered the complaints filed against him concerning previous payment disputes.

¶31.    The record provides some evidence that the City investigated other bidders. In a memo to the Mayor and Board of Aldermen, the city engineer stated that "[a]fter some research on the various bidders, it appears that the City would be best served by awarding the contract to the second [lowest] bidder, Freeland and Lemm." The City's investigation was focused primarily on Nelson because he had submitted the lowest bid.

¶32.    Nelson also argues that the City is time-barred when considering his past performance. For support, Nelson cites Title 48 of the Code of Federal Regulations, Section 42.1503, which effectively permits agencies to look back only three years on a contractor's past performance. 48 C.F.R. § 42.1503 (2004). However, the City was not bound by the Code of Federal Regulations for this project, and no similar provision exists under Mississippi law. Therefore, the City's consideration of Nelson's past performance was not an arbitrary and capricious act.

¶33.    Finally, Nelson argues that complaints concerning his payment disputes with previous suppliers should not have been considered by the City because these suppliers were protected by Nelson's payment bond. This Court has held that where bond is given under Mississippi Code Annotated Section 85-7-185 (Rev. 1999), the bond serves in lieu of any equity or trust

---

[2] Nelson dates his previous contract with the City as being six years ago. However, the record shows that the City awarded Nelson a contract for the City Hall project on December 1, 1998, and that work was performed on the contract until 2000. Thus, the contract dates back approximately five years from September 20, 2005, the date on which the City elected to deny Nelson the Goodman Project contract.

in favor of materialmen and laborers. *See **Dickson v. United States Fid. & Guar. Co.***, 150 Miss. 864, 117 So. 245, 248 (1928). Even though Section 85-7-185 affords protection for "persons furnishing labor or material," neither this provision nor Mississippi case law prohibits a governing authority from considering a contractor's prior disputes with creditors. Miss. Code Ann. § 85-7-185 (Rev. 1999). The aggregate of such disputes may bear upon the contractor's honesty, integrity, business judgment, conduct under previous contracts, and pecuniary ability—all of which have been held to be appropriate considerations in awarding a public contract. *See **Parker Bros.***, 68 So. 2d at 284-85.

¶34. Additionally, the complaints regarding Nelson were not isolated to payment disputes with suppliers. The complaint from the City of Pine Bluff, Arkansas, alleged that Nelson had not complied with the specifications of a contract. The complaint from Allen & Hoshall of Memphis, Tennessee, cited dissatisfaction with Nelson's performance on a project, stated that a lawsuit had been filed against Nelson, and added that Nelson was not allowed on other projects. Finally, the City's prior difficulties with Nelson on the City Hall project were extensively documented in the record and centered largely on Nelson's failure to comply with contract specifications.

¶35. While recognizing that disputes and complications are not uncommon within the construction industry, we find substantial evidence that the City did not act arbitrarily and capriciously in reaching its decision to award the contract to Freeland rather than Nelson.

**IV. Whether the circuit court erred in excluding an Occupational Safety and Health Administration (OSHA) news release from the record.**

13

¶36. In Nelson's reply brief before the circuit court, he referenced and attached as an exhibit a news release from the OSHA which showed that Freeland had been fined $96,400 for safety violations which resulted in the death of one of its employees. Nelson contends that the circuit court erred by not including the news release as part of the record.

¶37. The bill of exceptions constitutes the record on appeal. *Wilkinson County Bd. of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007, 1011 (Miss. 2000) (quoting *Hooks v. George County*, 748 So. 2d 678, 680 (Miss. 1999)); Miss. Code Ann. § 11-51-75 (Rev. 2005). Thus, the circuit court may review only the evidence included in the bill of exceptions. *E.g. id.*

¶38. Because the press release was not included in the bill of exceptions, we find that the circuit court did not err in excluding the OSHA news release from the record.

## CONCLUSION

¶39. Because we find that the City complied with Mississippi Code Annotated Section 31-7-13(d)(i), did not violate Nelson's due process rights, and did not act arbitrarily and capriciously in rejecting Nelson's lowest bid, we affirm the circuit court's order affirming the City of Horn Lake's decision.

¶40. **AFFIRMED**.

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**

14