# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00533-COA

**J&A EXCAVATION, INC.**                                                     **APPELLANT**

**v.**

**CITY OF ELLISVILLE, MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | DAVID BONDS ELLIS NICHOLAS JAMES TOCA |
| ATTORNEY FOR APPELLEE: | RANDY P. LAIRD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 09/19/2023 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-CA-00547-COA

**J&A EXCAVATION, INC.**                                                     **APPELLANT**

**v.**

**JONES COUNTY, MISSISSIPPI**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | DAVID BONDS ELLIS NICHOLAS JAMES TOCA |
| ATTORNEY FOR APPELLEE: | DANIELLE ASHLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 09/19/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     J&A Excavation Inc. (J&A) was the lowest bidder for two public construction contracts—one for the City of Ellisville and the other for Jones County. However, the City's Board of Aldermen and the County's Board of Supervisors rejected J&A's bids and accepted the next-lowest bids for the projects, both submitted by TM Productions LLC (TM). Both boards relied on negative feedback their engineer received regarding J&A's performance on other projects, but neither board inquired or received any information regarding TM's qualifications, reputation, or capabilities. J&A appealed the boards' decisions to the Jones County Circuit Court, which affirmed in both cases. J&A again appealed. We hold that the boards' decisions were not supported by substantial evidence and were arbitrary and capricious. Therefore, we reverse the judgments of the circuit court and remand both cases for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

### I.     The City of Ellisville Project

¶2.     The City of Ellisville published an advertisement for bids for a National Resources Conservation Service (NRCS) watershed protection project located at Camp Street, Church Street, and Main Street. The NRCS, an agency of the United States Department of Agriculture, would fund 75% of the cost of the project.

¶3.     The project engineer, Wiley Pickering of Chas. N. Clark Associates Ltd., received and opened four bids on March 28, 2022. J&A submitted the lowest bid of $198,359.15. TM

2

submitted the next-lowest bid of $214,035. Two other contractors submitted bids of $253,396 and $439,492.05.

¶4. Three days later, Pickering sent an email to Norman Patterson, a supervisory engineer at the NRCS. Pickering told Patterson that J&A was the low bidder on both the City's NRCS project and the County's NRCS project (discussed *infra*). Pickering asked Patterson if J&A was in "good standing" with the NRCS and whether J&A's work on similar NRCS projects had been "acceptable." Pickering did not mention or inquire about TM or any other bidder.

¶5. Patterson responded later the same day, stating:

> Actually, we have an active EWP [(Emergency Watershed Protection)] project agreement with construction being performed by [J&A]. It includes 5 bank stabilization structures. Unfortunately, at this time, none of them meet our minimal acceptance standards. The punch list items have remained for several months now. We've had similar results with another NRCS project awarded to them in Central Mississippi. I hope this information helps.

¶6. The next day, Pickering sent a letter to Ellisville's Mayor, recommending that the City select TM's bid as the lowest and best bid. Pickering stated:

> We have been advised that [J&A] has not performed well on other recent projects similar in scope, and that they are not currently in good standing with NRCS. Therefore, it is the recommendation of Chas. N. Clark Associates, Ltd., that the bid submitted by [TM] be considered as the lowest and best bid, and that the contract be awarded to [TM] in the amount of $214,035.00, contingent upon concurrence from NRCS.

Pickering's letter provided no information regarding TM, its standing with the NRCS, or its performance on other projects.

¶7. On April 5, 2022, the City's Board of Aldermen voted unanimously to accept TM's bid. The Board's minutes acknowledge that J&A submitted the lowest bid but state that

3

"based on [J&A's] poor performance on previous NRCS projects, it is the City's Engineer's recommendation that the next lowest bid be considered the best and lowest bid and that the project be awarded to [TM] . . . ."

¶8.  J&A filed a notice of appeal in the Jones County Circuit Court pursuant to Mississippi Code Annotated section 11-51-75 (Rev. 2019).

## II.     The Jones County Project

¶9.  Jones County published an advertisement for bids for an NRCS watershed protection project at West Jones High School.  Pickering, who also served as the project engineer for the County's project, received and opened four bids on March 28, 2022.  J&A submitted the lowest bid of $110,708.50.  TM submitted the next-lowest bid of $138,560.  Two other contractors submitted bids of $174,118.02 and $309,638.

¶10.  As discussed above, Pickering emailed Patterson three days later regarding both the Ellisville project and the Jones County project, and Patterson responded the same day.  *See supra* ¶¶4-5.  Neither Pickering nor Patterson mentioned TM or any other bidders.

¶11.  Pickering then sent a letter to the County recommending that it accept TM's bid as the lowest and best bid.  The substance of Pickering's letter to the County was the same as his letter to the City.  *See supra* ¶6.

¶12.  On April 4, 2022, the County's Board of Supervisors voted unanimously to accept TM's bid.  That Board's order states that "[t]he County Engineer advised the Board that the lowest bidder, J&A Excavation, was not in good standing with NRCS; therefore, the Board intends to award the project to the next lowest bidder as it is the lowest and best bid."  The

4

order did not address TM's qualifications or provide any other reason for the award.

¶13.　J&A filed a notice of appeal in the circuit court pursuant to section 11-51-75.

### III.　Proceedings in the Circuit Court

¶14.　As required by section 11-51-75(a)(iii), J&A included a designation of the record in each of its notices of appeal.　However, contrary to the requirements of section 11-51-75(c), neither the municipal clerk nor the clerk of the Board of Supervisors assembled a record of the proceedings or delivered a record to the circuit clerk.[1]

---

[1]As discussed below, the circuit court attempted to determine what should have been included in the record on appeal in each case, admitting documents that were actually presented to the Board of Aldermen or Board of Supervisors; contract specifications, bidding documents, and bids for the projects; and a "Notice of Grant Award and Agreement Award" for the Jones County project.　The circuit court also considered Pickering's testimony regarding the information that Pickering actually provided to the Board of Aldermen and the Board of Supervisors.　On appeal before this Court, no party has raised any issue regarding the content of the record.　However, what occurred in this case did not comply with section 11-51-75, which provides,

> The clerk of the board of supervisors or the municipal clerk *must* assemble a complete record of the proceedings to include all writings, matters, items, documents, plats, maps and transcripts of proceedings that were part of the record and deliver the complete record to the circuit clerk within thirty (30) days after the filing of the notice of appeal with the circuit clerk.　The clerk of the board of supervisors or the municipal clerk *shall* certify that the record is accurate and complete and contains all writings, matters, items, documents, plats, maps and transcripts of proceedings designated by appellant and appellee in their designations of record.

Miss. Code Ann. § 11-51-75(c) (emphasis added); *accord* UCRCCC 5.02 & 5.05.　In future cases, the municipal or board clerk *must* assemble a record on appeal, and if the clerk fails to do so, the appellant must request the circuit court's assistance in compelling the clerk to file the record.　*See* UCRCCC 5.05 ("Failure to file the record with the court clerk or to request the assistance of the court in compelling the same within thirty (30) days of the filing of the written notice of appeal may be deemed an abandonment of the appeal and the court may dismiss the same with costs to the appealing party or parties.").　Once the record has been filed, the circuit court may resolve any disputes regarding the content of the record and,

¶15. The circuit court held back-to-back hearings in the cases on May 12, 2022, starting with the City of Ellisville case. Citing the Mississippi Supreme Court's recent decision in *Board of Supervisors of Jackson County v. Qualite Sports Lighting LLC*, 337 So. 3d 1040 (Miss. 2022), the circuit judge stated he thought that "the first thing [he] ha[d] to do [was] determine exactly what the record" was, i.e., "the record as it existed at the time the [B]oard of [A]ldermen . . . made the decision to accept the [next-lowest] bid." The City suggested that Pickering should testify regarding what he told the City's Board of Aldermen prior to its vote to accept TM's bid. J&A objected to Pickering's testimony, arguing that the record of the meeting should be limited to the Board's minutes and attachments, which included the email exchange between Pickering and Patterson and Pickering's letter to the Mayor. The circuit judge ruled that Pickering should testify. The judge reasoned that because there was no transcript, Pickering could "relate on his oath what was told to the supervisors at that meeting or before that meeting," but Pickering would "be limited to that" and would not be allowed to offer "new evidence."

¶16. Pickering testified that he told the City's Board about Patterson's negative feedback regarding J&A, but he did not provide the Board with any detail beyond what Patterson stated in his email. Pickering stated that he told the Board that NRCS projects "require concurrence from [the] NRCS." Pickering acknowledged that he did not tell the Board

---

"if necessary, instruct the [municipal clerk or] clerk of the board to supplement the record with the necessary materials." *Bd. of Supervisors of Jackson Cnty. v. Qualite Sports Lighting LLC*, 337 So. 3d 1040, 1049 (¶28) (Miss. 2022). But the circuit court should not be forced to assemble the record from scratch. That is the job of the municipal clerk or board clerk.

6

anything about TM or its bid "other than that [his firm] found their bid to be the . . . best bid" and recommended "that they be awarded the project."

¶17.    In the Jones County case, Pickering testified that he discussed Patterson's negative feedback regarding J&A with the County's Board of Supervisors, but he did not provide the Board with any detail beyond what Patterson stated in his email. Pickering stated that he also told the Board that his firm had "firsthand experience" with J&A's poor performance on one of the projects that Patterson's email referenced. Pickering testified that he advised the Board that "Patterson did not provide concurrence in awarding the project to J&A."[2]

¶18.    The circuit court entered substantially similar opinions affirming the decisions of the Board of Aldermen and the Board of Supervisors. The court held that substantial evidence supported the decisions based on the information received from the NRCS (i.e., Patterson) and Pickering's recommendation based on his firm's prior experience with J&A. J&A filed a notice of appeal in both cases. This Court consolidated the two appeals because the two cases raise common issues of fact and law.

## ANALYSIS

¶19.    The circuit courts have appellate jurisdiction to review decisions of county boards of supervisors and municipal governing boards. Miss. Code Ann. § 11-51-75 ("Any person

---

[2] The record in the Jones County case includes the "Notice of Grant and Agreement Award" (Form NRCS-ADS-093) for the project. This document states that the County must obtain the NRCS's "concurrence" regarding various matters. However, during oral argument before this Court, counsel for both the County and the City conceded that the document does not specifically or expressly state that the NRCS must concur in the selection of the contractor. The Ellisville project apparently utilized the same form document with the same form terms, though the document was not made part of the record in the Ellisville case.

aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court . . . .”). This Court's “review [of such decisions] is limited.” *Rod Cooke Constr. Co. v. Lamar Cnty. Sch. Bd.*, 135 So. 3d 902, 906 (¶5) (Miss. Ct. App. 2013). As this Court has stated,

> [w]e will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence.

*Id.* (brackets omitted) (quoting *Precision Commc'ns Inc. v. Hinds County*, 74 So. 3d 366, 369 (¶9) (Miss. Ct. App. 2011)). This is the same standard of review applied by the circuit court. *Holliday Constr. LLC v. George County*, 352 So. 3d 651, 660 (¶31) (Miss. Ct. App. 2022). It is also the same standard of review that applies in appeals from decisions of administrative agencies. *Hooks v. George County*, 748 So. 2d 678, 680 (¶10) (Miss. 1999).

¶20. Public construction contracts involving more than $75,000 must be awarded to “the lowest and best bidder” following an advertised competitive bidding process. Miss. Code Ann. § 31-7-13(d)(i) (Supp. 2021). As the public bidding statute clearly implies, a governing body is not required “to accept a bid simply because it is the lowest.” *Billy E. Burnett Inc. v. Pontotoc Cnty. Bd. of Supervisors*, 940 So. 2d 241, 243 (¶6) (Miss. Ct. App. 2006); *see also Canton Farm Equip. Inc. v. Richardson*, 501 So. 2d 1098, 1104 (Miss. 1987) (“[I]t is important to understand that the board is not invariably required to accept the lowest bid. Rather our law contemplates that the board, if it accepts any bids at all, will accept the

8

'lowest and best bid.'")[3]  A board may consider factors other than price to determine which bid is the lowest *and best* bid.  *Rod Cooke Constr. Co.*, 135 So. 3d at 907 (¶7).  In making that determination, "public authorities may . . . take into consideration factors such as the bidder's honesty and integrity, the bidder's skill and business judgment, the bidder's experience and facilities for carrying out the contract, the bidder's conduct under previous contracts, and the quality of work previously done by the bidder."  *Billy E. Burnett Inc.*, 940 So. 2d at 243 (¶6).

¶21.    If a public board "accepts a bid other than the lowest bid actually submitted, it shall place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid."  Miss. Code Ann. § 31-7-13(d)(i).  Although the board must provide some explanation as to why it did not accept the lowest bid, "Mississippi bid laws do *not* require a hearing when a governing authority rejects a lowest bid."  *Nelson v. City of Horn Lake*, 968 So. 2d 938, 945 (¶27) (Miss. 2007) (emphasis added).

¶22.    While a governing board is "vested with a sound discretion in making a determination as to who is the 'lowest and best bidder,'" the board may not "act arbitrarily."  *Parker Bros. v. Crawford*, 219 Miss. 199, 209, 68 So. 2d 281, 285 (1953).  "An act is arbitrary . . . when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances."  *Nelson*, 968 So. 2d at 942 (¶11).  "[S]uch public authorities must always

---

[3] "Nevertheless, all else being equal, it is the duty of public authorities . . . to accept the bid involving the least expenditure of public funds."  *Parker Bros. v. Crawford*, 219 Miss. 199, 209, 68 So. 2d 281, 285 (1953).

exercise a real discretion based upon facts reasonably tending to support their decision." *Parker Bros.*, 219 Miss. at 209, 68 So. 2d at 285. In addition, substantial evidence must support the board's decision. *Nelson*, 968 So. 2d at 942 (¶11). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a 'mere scintilla' of evidence." *Id.* (quotation marks and ellipsis omitted).

¶23. In the present case, the Board of Aldermen and the Board of Supervisors rejected J&A's low bids and accepted TM's next-lowest bids. Both boards attempted to comply with the statutory requirement that when the lowest bid is rejected, the board must "place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid." Miss. Code Ann. § 31-7-13(d)(i). The Board of Aldermen's minutes show that it accepted TM's bid "based on [J&A's] poor performance on previous NRCS projects." The Board of Supervisors' minutes similarly state that it accepted TM's bid because J&A "was not in good standing with [the] NRCS." Both boards' minutes also show the dollar amounts of the bids.[4]

¶24. But despite the boards' attempts to comply with the statute, the boards' minutes and the records in these two cases fail to explain or demonstrate how TM's bids were in any way *better* than J&A's bids. Under Mississippi law, each board was required to award its contract

---

[4] The Supreme Court has indicated that when a low bid is rejected because of concerns regarding the quality of its previous work, "there will most likely be little in the way of 'detailed calculations' to include in the governing authority's minutes," and the minutes can "provide[] the minimal, requisite 'detailed calculations' . . . by citing the dollar amounts of the lowest bid and accepted bid." *Nelson*, 968 So. 2d at 943 (¶¶14-15).

10

to "the lowest and best bidder." Miss. Code Ann. § 31-7-13(d)(i). We know for a fact that TM was *not* "the lowest . . . bidder." *Id.* In the City of Ellisville case, TM's bid was 25% higher than J&A's bid, and in the Jones County case, TM's bid was about 7.9% higher than J&A's bid.

¶25. Therefore, to uphold the boards' decisions, there must be something in the record to show that TM was the "*best* bidder." *Id.* (emphasis added). As discussed above, the record before both the Board of Aldermen and the Board of Supervisors includes evidence that the NRCS (Patterson) and Pickering's firm had negative experiences with J&A on prior projects. However, the record does not include any evidence regarding TM's qualifications, reputation, or capabilities.[5]

¶26. Precedents affirming the rejection of low bids have consistently pointed to some evidence regarding the capabilities of the winning bidder. For instance, in *Parker Bros.*, a school board "was advised by its architects that [the winning bidder] was well qualified from experience and financial responsibility, but that [the low bidder] was deficient on both of these factors." *Parker Bros.*, 219 Miss. at 204, 68 So. 2d at 282. There, the board "had information from their architects and other sources that [the winning bidder] . . . had a large amount of experience in plumbing, heating and ventilating contracts similar to the one in question," whereas the low bidder "had no experience as contractors," having worked only

---

[5] *After* J&A appealed, Pickering stated in an unsworn letter to counsel for Jones County that his firm "had previous experience with TM . . . , and their work was found to be in compliance with the project specifications." Pickering's letter also asserted that he had spoken with Patterson, and Patterson was "in agreement with [the] recommendation" to award the contract to TM. However, the circuit court properly declined to consider the post-appeal letter, as the Board of Supervisors did not receive or consider this information.

11

as employees for other contractors. *Id.* at 206, 68 So. 2d at 283.

¶27.   In *Rod Cooke Construction Co.*, a school board received and considered "positive comments" and "negative comments" regarding "*both* bidders," i.e., the lowest bidder and second-lowest bidder. *Rod Cooke Constr. Co.*, 135 So. 3d at 905 (¶2) (emphasis added). The project architect "investigated both [bidders] *in an equal manner*, contacting seven prior references for each," and provided the board with positive and negative comments regarding each. *Id.* at 907 (¶10) (emphasis added).

¶28.   In *Billy E. Burnett Inc.*, the board of supervisors contacted the low bidder's references, "some references were very negative, and . . . overall, the responses indicated that [the low bidder's] work was mediocre." *Billy E. Burnett Inc.*, 940 So. 2d at 243 (¶7). In contrast, the winning bidder "had been awarded construction contracts in [the county], and [its] work and reputation were known to be excellent." *Id.* We affirmed the board's decision, stating that it "rightly considered the *relative* experience and reputation of the two firms." *Id.* at 245 (emphasis added). The board "did not act arbitrarily and capriciously in awarding the construction contract . . . , as the board was free to consider the experience, skill, and reputation *of the competing firms* in determining which bid was the 'lowest and best.'" *Id.* (emphasis added); *see also Qualite Sports Lighting LLC*, 337 So. 3d at 1042 (¶3) (noting that the project engineer contacted references for both bidders and reported the responses to the board of supervisors).

¶29.   Finally, in *Nelson*, the low bidder, whose bid was rejected, made a similar argument to the argument J&A makes in this case. *Nelson*, 968 So. 2d at 945 (¶30). The low bidder

alleged "that the City engaged in a 'witchhunt' to deny him the . . . contract and did not investigate [the winning bidder] or other bidders." *Id.* However, the Supreme Court rejected the low bidder's argument because "[t]he record provide[d] some evidence that the City investigated other bidders." *Id.* at (¶31).

¶30.    In the present case, in contrast, the record provides *no evidence* that the Board of Aldermen or the Board of Supervisors received any information regarding TM. Pickering's recommendation letters to the boards did not mention TM's qualifications, reputation, or capabilities. Furthermore, nothing else in the boards' minutes or records show that they ever received or considered such information. Finally, Pickering did not testify that he told either of the boards anything about TM. The record does show that Pickering received some negative feedback regarding J&A, but the record does not show that he ever sought any feedback or had any prior experience with TM. If he did, the record indicates that no such information was conveyed to either board. In the absence of such evidence, there is no way for a reviewing court to determine whether TM was in any respect *better* than J&A, let alone the "lowest and best bidder." In the absence of some evidence *comparing* the qualifications, reputations, or capabilities of the competing bidders, we cannot affirm a governing authority's rejection of the low bidder. *See Parker Bros.*, 219 Miss. at 209, 68 So. 2d at 285 ("[A]ll else being equal, it is the duty of public authorities . . . to accept the bid involving the least expenditure of public funds."). Put simply, we cannot possibly determine that TM was *better* than J&A or "the lowest and best bidder" *when the record discloses nothing about TM except that it did **not** submit the lowest bid.*

13

¶31. Because there is no evidence in the record that TM was the "lowest and best bidder," Miss. Code Ann. § 31-7-13(d)(i), the decisions of the Board of Aldermen and the Board of Supervisors awarding the subject construction contracts to TM are not supported by "substantial evidence." In addition, because the boards' decisions are "not based on substantial evidence, it necessarily follows that the decision[s] [are] arbitrary and capricious." *Pub. Emps.' Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1019 (¶14) (Miss. 2003) (quoting *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (¶13) (Miss. 1999)); *accord Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019). Therefore, the judgments of the Jones County Circuit Court affirming the decisions of the Board of Aldermen and Board of Supervisors are reversed, and the cases are remanded for further proceedings consistent with this opinion.

¶32. Mississippi Code Annotated section 11-51-75(d) provides "[i]f the judgment is reversed, the circuit court shall render such judgment or decision as the board of supervisors or the governing authority of the municipality ought to have rendered, and certify the same to the board of supervisors or the governing authority of the municipality. Costs shall be awarded as in other cases." Miss. Code Ann. § 11-51-75(d). In an appeal from a competitive bid award, the appropriate remedy may be to order the governmental entity to either accept the bid that it should have accepted "or reject all bids and rebid the project." *City of Durant v. Laws Constr. Co.*, 721 So. 2d 598, 600, 605 (¶¶4, 28) (Miss. 1998); *accord Holliday Constr. LLC*, 352 So. 3d at 662-66 (¶¶40-52). However, if the project has been substantially completed during the litigation, damages for breach of contract may be an appropriate

remedy.  *City of Durant*, 721 So. 2d at 605-06 (¶¶28, 34); *accord W.G. Yates & Sons Constr. Co. v. City of Waveland*, 168 So. 3d 963, 974-75 (¶¶61-64) (Miss. Ct. App. 2012).

¶33.    The records in the two cases before us do not show what became of these projects during this litigation or whether either the City or the County might have rejected all bids if they could not accept TM's bid.  *Cf. City of Durant*, 721 So. 2d at 605 (¶28) ("Under normal circumstances, the circuit court would have ordered the City not to consider [an invalid] bid, and either accept the next lowest bid or reject all bids and rebid the project.").  Because the records in these two cases do not permit us to determine the appropriate remedy or remedies in the particular circumstances of these cases, we remand the cases to the circuit court for further proceedings on this issue.

## CONCLUSION

¶34.    The decisions of the Board of Aldermen and the Board of Supervisors were not supported by substantial evidence and were arbitrary and capricious because each board rejected J&A's low bid and accepted the next-lowest bid without any record evidence regarding the qualifications, reputation, or capabilities of the selected bidder.  Therefore, the judgments of the circuit court are reversed, and these cases are remanded to the circuit court for further proceedings consistent with this opinion.

¶35.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**