BARNES, J., for the Court:
¶ 1. On July 8, 2011, the Lamar County School Board (Board) issued a solicitation for bids for the construction of a new elementary school. Rod Cooke Construction Company (Cooke), a nonresident contractor from Alabama, submitted the lowest bid of $9,232,000. The second lowest bid was submitted by Hanco Corporation (Hanco), a Mississippi resident contractor. Hanco’s bid was $9,321,000 ($89,000 more than Cooke’s bid).
¶ 2. At the September 28, 2011 Board meeting, the proposed bids for construction of the elementary school were discussed, and the three lowest bids were considered. The minutes from the meeting noted:
Board Counsel provided a narrative summary of the job performance of the two companies, Rod Cooke Construction and Hanco Corporation. Counsel reported that the information provided as a summary was obtained from various sources including contact with contractors, architects, subcontractors^] and property owners. There were positive comments for both bidders, and the summary of negative comments [is] as follows:
Rod Cooke Construction:
1. A lack of coordination of some projects between the general and subcontractors resulted in delay in completion.
2. Occasional delay in paying subcontractors timely has created negative attitudes and problems with subcontractors.
3. Dissatisfaction with the workmanship from the perspective of a few owners.
4. Delay in completing time sensitive projects.
Hanco:
1. Delay in completing a project-not a time sensitive project.
Upon hearing the information from [Board Counsel], Dr. Burnett recommended that the Board proceed with awarding the bid and that they accept the Hanco Corporation bid.
Buddy Morris then made a motion to award the bid to Hanco [Corporation] based on the preference to resident contractors and based on Hanco [Corporation] being the “lowest and best bid” as well as “substantially equal” in cost to Rod Cooke Construction.
Thus, the Board awarded the job to the second lowest bidder, Hanco.
¶ 3. On September 29, 2011, Cooke filed a protest; however, the Board did not reconsider its decision to reject Cooke’s bid. Board counsel sent a letter to Cooke on October 6, 2011, outlining the Board’s reasons for awarding the bid to Hanco. Cooke filed a notice of appeal with the Lamar County Circuit Court on October 10, 2011; Cooke’s bill of exceptions, signed by the Board president, was filed on Octo *906 ber 11, 2011. A hearing was held on February 6, 2012, and the circuit court affirmed the Board’s decision to award the job to Hanco.
¶ 4. On appeal, we find that the Board’s award of the contract to Hanco was not arbitrary or capricious, and we uphold the circuit court’s judgment.
STANDARD OF REVIEW
¶ 5. Our review of a municipal board’s actions is limited. Precision Commc’ns, Inc. v. Hinds Cnty., 74 So.3d 366, 369 (¶ 9) (Miss.Ct.App.2011) (citing Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen, 968 So.2d 938, 942 (¶ 10) (Miss. 2007)).
[W]e will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence.
Id. (internal citations and quotation marks omitted). Questions of law and issues of statutory interpretation, however, are reviewed de novo. Id.
DISCUSSION
I. Whether the “Instructions to Bidders” required the Board to award the contract to Cooke as the low bidder and whether the Board’s investigation into Cooke’s past performance was arbitrary, capricious, and self-serving.
¶ 6. Cooke contends that language in the “Instructions to Bidders” required the Board to accept the lowest bid offer and that the bid documents should have reflected that past performance would be considered in awarding the bid. The “Instructions for Bidders” stated:
Award of Contract: Contract will be awarded on the basis of the low base bid or low combination of base bid and those alternates if any which produce a total within available funds. The Owner reserves the right to waive irregularities and to reject any and all bids.
However, the instructions also noted: “Disqualification of Bidder: ‘The Owner reserves the right to award to other than the low bidder when, in the Owner’s judgment, it is in his best interest to do so.’ ”
¶ 7. Mississippi Code Annotated section 31 — 7—13(d)(i) (Supp.2012), which governs the bidding process for awarding public contracts, states:
Purchases may be made from the lowest and best bidder.... If any governing authority accepts a bid other than the lowest bid actually submitted, it shall place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid.
(Emphasis added). “It is implicit in this language that a governing body cannot be compelled to accept a bid simply because it is the lowest, and that other factors must enter the analysis.” Billy E. Burnett, Inc. v. Pontotoc Cnty. Bd. of Supervisors, 940 So.2d 241, 243 (¶ 6) (Miss Ct.App.2006). Even prior to the enactment of section 31-7-13, the Mississippi Supreme Court held: “The ‘lowest’ bid may be determined by monetary standards with the dollar as the unit, but this is not so in determining the ‘best’ bid, or the ‘responsible’ bid; that question involves a number of other fac *907 tors and elements.” Parker Bros. v. Crawford, 219 Miss. 199, 208, 68 So.2d 281, 284 (1953). Thus, an administrative agency is not required to accept the lowest bid, without any regard as to whether it is also the “best” bid.
¶ 8. The Board complied with the statutory requirements of section 31-7-13(d)(i). Included in the record is a “narrative summary” detailing the basis for the Board’s award of the contract to Hanco. Also included are the detailed calculations of the two bids. The bid documents clearly state that the Board could award a contract to a bidder that was not the lowest bidder if the Board determined that it was “best” to do so. Accordingly, we find Cooke’s claim that the bid documents required the Board to accept the lowest bid without merit.[1]
¶ 9. Cooke also argues that past performance was not a criterion specified in the solicitation for bids and that the Board’s investigation into Cooke’s past performance with other entities was not “fair and objective” and was “the epitome of arbitrary and capricious conduct by a public body.”
¶ 10. Cooke maintains that prior payment disputes with suppliers should not have been taken into consideration, as its suppliers were protected by a payment bond. However, the supreme court rejected this argument in Nelson, 968 So.2d at 946 (¶ 33):
This Court has held that where bond is given under Mississippi Code Annotated Section 85-7-185 (Rev.1999), the bond serves in lieu of any equity or trust in favor of materialmen and laborers. See Dickson v. United States Fid. & Guar. Co., 150 Miss. 864, 117 So. 245, 248 (1928). Even though Section 85-7-185 affords protection for “persons furnishing labor or material,” neither this provision nor Mississippi case law prohibits a governing authority from considering a contractor’s prior disputes with creditors. Miss.Code Ann. § 85-7-185 (Rev. 1999). The aggregate of such disputes may bear upon the contractor’s honesty, integrity, business judgment, conduct under previous contracts, and pecuniary ability — all of which have been held to be appropriate considerations in awarding a public contract. See Parker Bros., [219 Miss, at 208-09,] 68 So.2d at 284-85.
Furthermore, not all of the complaints concerned payment issues; some alleged deficient workmanship and project-management problems. The project architect’s letter to the Board reveals that he investigated both Cooke and Hanco in an equal manner, contacting seven prior references for each. We note that there was also some positive feedback concerning Cooke’s performance included in the letter.
¶ 11. As we have already noted, Mississippi’s appellate courts have consistently stated that the law permits a governing authority to consider factors other than price in determining who is the lowest and best bidder. In Burnett, 940 So.2d at 243 (¶ 6), this Court stated:
The Mississippi Supreme Court has recognized that public authorities may, in making a determination of whether a bid is the lowest and best, take into consideration factors such as the bidder’s honesty and integrity, the bidder’s skill and business judgment, the bidder’s experience and facilities for carrying out the *908 contract, the bidder’s conduct under previous contracts, and the quality of work previously done by the bidder.
(Emphasis added) (citing Parker Bros., 219 Miss, at 209, 68 So.2d at 285). One year later, the supreme court reiterated in Nelson:
All matters that relate to a bidder’s prompt and efficient performance of the contract are material to a bidder’s “responsibility,” including the bidder’s honesty and integrity, skill and business judgment, experience and facilities for performing the contract, conduct under previous contracts, and the quality of previous work.
Nelson, 968 So.2d at 943 (¶ 16) (citing Parker Bros., 219 Miss. at 208-09, 68 So.2d at 284-85).
¶ 12. In the present case, the Board reviewed the bids and asked the project architect and others to gather and provide information regarding previous work and experience of the two lowest bidders. As stated by the Board on appeal, “[t]here is no precedent for allowing the bidders to dictate to a public body the limits or methodology of the investigation the body should conduct[.]” Furthermore, Cooke has provided no case law to support its argument that a public entity must put prospective bidders on notice that past performance is a criterion for award of a contract. Accordingly, we agree with the circuit judge that the Board’s actions were “reasonable under the circumstances.”
II. Whether the circuit court erred in finding that Mississippi’s preference statutes, Mississippi Code Annotated section 31-3-21(3) (Rev.2010) and Mississippi Code Annotated section 31-7-47 (Rev. 2010), permitted the Board to award the contract to Hanco.
¶ 13. The Board minutes reflect that one of the reasons Hanco was awarded the contract, despite not being the lowest bidder, was the preference given to Mississippi resident contractors. In response to Cooke’s protest of the Board’s decision, counsel for the Board submitted a letter, stating:
The award to Hanco was based on a preference for resident contractors and based on lowest and best bid.... Neither the Board nor I have ever indicated that Cooke Construction is not a responsible contractor. The Board simply voted that Hanco ... was the lowest and best bid for this project.
¶ 14. Mississippi Code Annotated section 31-7-47 states:
In the letting of public contracts!,] preference shall be given to resident contractors, and a nonresident bidder domiciled in a state, city, county, parish, province, nation or political subdivision having laws granting preference to local contractors shall be awarded Mississippi public contracts only on the same basis as the nonresident bidder’s state, city, county, parish, province, nation or political subdivision awards contracts to Mississippi contractors bidding under similar circumstances. Resident contractors actually domiciled in Mississippi, be they corporate, individuals or partnerships, are to be granted preference over nonresidents in awarding of contracts in the same manner and to the same extent as provided by the laws of the state, city, county, parish, province, nation or political subdivision of domicile of the nonresident.
(Emphasis added). Mississippi Code Annotated section 31-3-21(3) also states, in pertinent part:
In the letting of public contracts, preference shall be given to resident contrac *909 tors, and a nonresident bidder domiciled in a state having laws granting preference to local contractors shall be awarded Mississippi public contracts only on the same basis as the nonresident bidder’s state awards contracts to Mississippi contractors bidding under similar circumstances; and resident contractors actually domiciled in Mississippi, be they corporate, individuals, or partnerships, are to be granted preference over nonresidents in awarding of contracts in the same manner and to the same extent as provided by the laws of the state of domicile of the nonresident.
(Emphasis added).
¶ 15. Cooke argues that the Mississippi “preference” statutes “are only intended to protect Mississippi contractors from preference laws being used against them when bidding projects in other jurisdictions.” Cooke cites Refrigeration Sales Co., Inc. v. State of Mississippi, 645 So.2d 1851 (Miss. 1994), to support its argument. In that case, the Mississippi Supreme Court reversed the State of Mississippi’s award of a contract to a vendor, finding that since the State of New York did not have a preference statute, the “application of the bid preference is misguided because of the lack of similar circumstances and the lack of reciprocity in the process.” Id. at 1855.
¶ 16. The question is whether Alabama would grant its contractors preference over Mississippi contractors under the same circumstances. Alabama, Cooke’s resident state, has a preference statute for resident contractors that is similar to the Mississippi preference statutes. Alabama Code section 39-3-5(a) (1975) states:
In the letting of public contracts in which any state, county, or municipal funds are utilized, except those contracts funded in whole or in part with funds received from a federal agency, preference shall be given to resident contractors, and a nonresident bidder domiciled in a state having laws granting preference to local contractors shall be awarded Alabama public contracts only on the same basis as the nonresident bidder’s state awards contracts to Alabama contractors bidding under similar circumstances; and resident contractors in Alabama, as defined in Section 39-2-12, be they corporate, individuals, or partnerships, are to be granted preference over nonresidents in awarding of contracts in the same manner and to the same extent as provided by the laws of the state of domicile of the nonresident.
(Emphasis added).
¶ 17. This Court considered a similar situation in Burnett, 940 So.2d 241. Billy Burnett was a nonresident contractor from Alabama. Although Burnett submitted the lowest bid, Pontotoc County awarded the contract to the second lowest bidder, who was a Mississippi resident contractor. We recognized the supreme court’s holding in Refrigeration Sales, noting that “the legislative purpose of Section 31-7-47 is to give preference to contractors who are residents of the State of Mississippi.” Id. at 244-45 (¶ 11). However, we observed that “the extent of the preference is not clear from the text of the statute, and has not been clarified via case law.” Id. at 245 (¶ 11). We deferred ruling on the issue of statutory preference in Burnett, because the circuit court “found an independent basis for the award to Hooker, namely, that the board rightly considered the relative experience and reputation of the two firms, and made the award to Hooker after taking these factors into consideration.” Id. at (¶ 13).
¶ 18. As noted in the Burnett opinion, the circuit court’s ruling was based in part on the Mississippi Attorney General’s “approach to [the] issue.” Id. at (¶ 12). The Attorney General’s Office has issued sever *910 al opinions interpreting the preference conferred by sections 31-3-21(3) and 31-7-47, in one instance noting that “[t]he intent of [section 31-7-47] was to afford Mississippi contractors the right to compete on a equal basis with nonresident vendors having preference laws in their respective state[s].” Miss. Att’y- Gen. Op., 1991 WL 577578, Segrest (Mar. 25, 1991) (emphasis added).
¶ 19. The Attorney General has also consistently opined that “[i]f the preference laws of the state of the nonresident contractor are the same as Mississippi’s, and if the bids are in all other respects equal, then Mississippi law would grant preference to the Mississippi bidder.” Miss. Att’y Gen. Op., 1991 WL 577847, Henley (July 31, 1991) (emphasis added); see also Miss. Att’y. Gen. Op., 2006-00148, 2006 WL 1966813, Dye (May 19, 2006) (“The purpose of bid preference statutes is to protect resident contractors and give preference to these contractors over nonresident contractors in situations in which the bids are equal or substantially equal.”);’ Miss. Att’y Gen. Op., 2001-00480, 2001 WL 1082606, Brown (Aug. 17, 2001) (“If the preference laws of the state of the nonresident contractor are the same as Mississippi’s, and if the bids are in all other respects equal or substantially equal, then Mississippi law would grant preference to the Mississippi bidder.”); Miss. Att’y Gen. Op., 93-0043, 1993 WL 669222, Cardin (March 17, 1993) (“[T]he preference granted by Section 31-3-21(3) would apply only when the public body is considering bids that are equal or substantially equal under the statutory standards which the body must use to make its determination as to the best bid.”). However, the Attorney General cites no statutory authority for the grant of preference for resident bidders when the bids are otherwise equal, and this Court been unable to find any.
¶ 20. The Mississippi and Alabama statutes are termed “reciprocal preference” statutes — Alabama treats nonresident contractors in the same manner that Mississippi treats nonresident contractors. These types of statutes are “designed to exact equal treatment in cross jurisdictional bidding” and “to ensure equity and fairness in interstate public procurement.” Kingsley S. Osei, The Best of Both Worlds: Reciprocal Preference and Punitive Retaliation in Public Contracts, 40 Pub. Cont. L.J. 715, 734-38 (2011).
¶21. To assist in our analysis, Cooke has provided this Court with the Alabama Attorney General’s interpretation of the effect of this language. In Ala. Att’y Gen. Op., 85-00354, Scoggins (May 15, 1985), the Alabama Attorney General considered the language of Alabama’s section 39-3-5, in relation to Mississippi’s section 31-3-21, and held that an Alabama public body was “not required to give preference to resident Alabama contractors over Mississippi contractors because the Mississippi law treats Alabama contractors in the same manner that Alabama treats Mississippi contractors.” (Emphasis added). Therefore, we find that when the two states’ reciprocal-preference language (“in the same manner and to the same extent”) are employed, they offset one another, creating a situation where no preference can be considered. Consequently, when we consider this specific portion of the statutes, Cooke’s claim that “no such ‘preference’ exists in this instance” is correct.
¶ 22. However, like Burnett, residence was not the sole reason for the award; other factors, such as past performance and vendor and client referrals, were considered. The Board stated in its final bill of exceptions that the preference given to a Mississippi contractor only played a “minor part” in the bid award and “was not an overriding eonsideration[.]” *911 Rather, the Board awarded the bid to Hanco because it was the lowest and “best” bid. Accordingly, while we find merit to Cooke’s argument, it does not warrant a reversal of the Board’s decision to award the bid to Hanco.
III. Whether the Board acted arbitrarily and capriciously in awarding the contract on the basis that it was “equal or substantially equal” to the lowest bid.
¶ 28. As discussed, the Attorney General’s Office has issued opinions stating that preference may be given to a resident contractor under section 31-3-21 if “the public body is considering two apparent low bids that are ‘equal or substantially equal’ and involve the submission of at least one bid from a non-resident contractor.” Miss. Att’y. Gen. Op., 2007-00452, 2007 WL 3356834, Jones (Sept. 4, 2007). Cooke argues that Attorney General opinions are merely advisory and limited to specific factual situations. Thus, it claims that there is no statutory authority that permits a public body to award contracts based on these criteria and for the Board to do so was error. Cooke is correct in one respect. “Attorney General opinions are not binding upon our courts.” Burnett, 940 So.2d at 245 (¶ 13). However, “[a]n [Attorney [G]eneral’s opinion is entitled to careful consideration and regarded as persuasive[J” Blackwell v. Miss. Bd. of Animal Health, 784 So.2d 996, 1000 (¶ 9) (Miss.Ct.App.2001) (citing State ex rel. Holmes v. Griffin, 667 So.2d 1319, 1326 (Miss.1995)).
¶ 24. The Attorney General has advised:
Although it appears to us that a difference of 2% is substantial, whether bids are equal or substantially equal is a discretionary determination that the public body itself must initially make and that should be explained in the minutes. If [the public body] determines that bids are or are not equal or substantially equal, then the statutory preference provisions in favor of Mississippi bidders apply or do not apply, respectively.
Miss. Att’y Gen. Op., 2003-0501, 2004 WL 308541, Winfield (Jan. 29, 2004). There is no bright-line distinction as to what percentage variance constitutes an “equal or substantial bid”; this determination is left to the discretion of the public body.
¶ 25. We have already noted that the Attorney General’s emphasis on whether a bid is “equal or substantially equal” in relation to the preference statutes is not rooted in any statute or case law. Regardless, the Attorney General opinions have not eliminated the requirement that a public entity also determine whether a bid is the lowest and “best” bid. The Attorney General has noted that the mandate requiring submission of a foreign state’s bid preference law by the nonresident contractor is designed “to provide public agencies with a means of making any calculations that might be necessary in order to enforce Mississippi’s preference law and to enable the agencies to determine the lowest and best bid without performing additional research.”[2] Miss. Att’y Gen. Op., 2009-00363, 2009 WL 2184252, Dulaney (June 26, 2009) (emphasis added and citation omitted). In a more recent opinion, Miss. Att’y Gen. Op., 2013-00089, 2013 WL 1720568, Price (March 22, 2013), the Attorney General stated:
*912 Governing authorities are obligated to carefully scrutinize each bid for not only the amount of the bid, but also the quality of the bid. In the event that the school district determines, after careful scrutiny of the bids on both amount and quality, that there is still no “best bid,” it will be required to reject all bids and begin the process anew, until it can decide on a “lowest and best bidder.”
(Emphasis added and internal citation omitted).
¶ 26. In Burnett, we upheld an award of contract to the second lowest bidder, even though the price differential was 2.35%. Burnett, 940 So.2d at 243-44 (¶ 7). In the present case, the difference in cost was less than 1%. Upon review, we conclude that the Board’s finding — that a difference of 0.95% meant that the bids were “substantially equal” — was not arbitrary or capricious. More importantly, the Board was justified in finding that Hanco’s bid was the lowest and “best” bid.
IV. Whether the Board was without authority to determine whether Cooke was a “responsible” contractor.
¶ 27. Cooke argues that since it held a “Certificate of Responsibility” from the Mississippi State Board of Contractors (MSBOC), it should have been awarded the contract as the “lowest and best bidder.” In other words, Cooke claims that the MSBOC has the “sole discretion to decide whether a contractor is responsible and should be permitted to hold a certificate of responsibility.” Therefore, it contends that the Board “usurp[ed] the authority of the MSBOC and establish[ed] its own criteria for awarding this public contract to the second low bidder at an additional cost of $89,000[.]”
¶ 28. Section 31-7-18(d)(i) gives a public board the discretion to accept a bid that is not the lowest, as long as it provides detailed calculations and a narrative summary as to why it did so. This was done in the present case. Furthermore, as the Board noted on appeal, all vendors that submitted bids possessed a valid “Certificate of Responsibility.”[3] Consequently, we find nothing arbitrary or capricious in the Board’s determination that Cooke’s bid was not the “best” bid.
V. Whether the circuit court erred in allowing the Board to amend its bill of exceptions.
¶ 29. The circuit court scheduled a hearing on February 6, 2012, to consider Cooke’s bill of exceptions and to review the Board’s decision. A few days prior to the hearing, on January 27, 2012, Cooke filed a motion to supplement the record. The Board responded to the motion on January 30, 2012, and requested that the hearing be rescheduled in light of this last-minute information submitted by Cooke. The Board also filed an amended “Final Bill of Exceptions” on February 2, 2012. Cooke responded with a motion to strike the Board’s final bill of exceptions on February 3, 2012.
¶ 30. Cooke contends there is no statutory or legal authority that permitted the Board to amend the bill of exceptions. Cooke cites Mississippi Code Annotated section 11-51-75 (Rev.2012) to support its claim that only a party “aggrieved by a judgment” may file a “bill of exceptions” with the circuit court. Thus, Cooke argues that the final bill of exceptions is an improper response to its motion to supplement the record. Cooke further claims that the amended bill of exceptions violat *913 ed Mississippi Code Annotation section 11-7-211 (Rev.2004), which requires:
Bills of exception, with the approval of the trial judge, may be amended at any time before the hearing on appeal, for the purpose of curing omissions, defects, or inaccuracy; but no such amendment shall be made until the parties interested shall have been given five days’ notice of such proposed amendment.
(Emphasis added). Cooke argues that he had only three days’ notice; therefore, the circuit court should not have allowed the Board to amend its response.
¶ 31. This issue was thoroughly considered by the circuit court at the hearing. The Board noted Cooke’s objections and requested a continuance, expressing concern that this procedural issue would be brought on appeal. The circuit judge, responding to arguments by Cooke’s counsel, Christopher Solop, stated:
I have reviewed all of this information, even the information that came in late Friday. And as I told you both in a telephonic hearing, ... this Court doesn’t like to play games with form over substance. I have been pretty open and I’ve allowed you and Mr. [David] Ott [ (Board counsel) ] to present information to the Court. And I’ve been pretty open about allowing this, and I will continue that mode. I’m not going to exclude what you have given me, either one of you.
He concluded that neither party was adversely prejudiced by the failure, stating that “a couple of days in the heat of battle in this litigious process has not impaired either one of your clients.”
¶ 32. First, we agree with the circuit court’s observation that Cooke’s argument regarding the style of the Board’s pleading is one of form over substance. The comment to Rule 7 of the Mississippi Rules of Civil Procedure (“Pleadings Allowed: Form of Motions”) states: “The purpose of Rule 7 is to facilitate the court’s ability to reach a just decision on the merits of a case by providing for a simple and elastic pleading and motion procedure which emphasize substance rather than form.” Moreover, after the circuit court affirmed the Board’s decision at the hearing, Cooke acquiesced to the court’s findings and requested that the style of its own motion be amended:
Mr. Solop: May I, for the record, ask the Court to amend the style of our pleading to supplement the administrative record to a motion to amend the bill of exceptions[?] I think it’s, as you indicated, Your Honor, a matter of form over substance. It was, in fact, a motion that was intended to amend the bill of exceptions. So for the record, I would like it to reflect that.
[[Image here]]
The Court: I don’t really have a problem with that. Mr. Ott, what do you say?
Mr. Ott: Your Honor, I think that it might be cleaner and neater and in harmony with what your Honor has articulated if the Court ruled that the bill of exceptions and the record before the Court on appeal clearly consisted of both Mr. Solop’s supplement that was presented and filed on January 26 [,] as well as the final bill of exceptions presented on Thursday of last week.
(Emphasis added).
¶ 33. As to Cooke’s second point of contention, there is no question that the Board failed to meet the five-day notice requirement from section 11-7-211. However, Cooke’s motion to supplement the record was filed mere days before the hearing and contained letters intended to *914 contradict any negative representation of Cooke’s reputation. The motion to supplement included a letter to the project architect, dated December 9, 2011, threatening that negative comments against Cooke could result in civil legal action for defamation. Cooke also sent a similar letter to a vendor who had claimed Cooke did not pay for supplies in a timely manner. Thus, the Board notes that its amended final bill of exceptions, filed three days before the hearing, was necessary to clarify and complete the record. It contained affidavits from the letter recipients (the project architect and vendor) affirming their prior statements regarding Cooke’s past performance.
¶ 34. “It is well settled that the bill of exceptions constitutes the record on appeal from a municipality’s decision, and the circuit court must not consider matters that are not a part of that record.” Brinsmade v. City of Biloxi, 70 So.3d 1159, 1165 (¶ 23) (Miss.Ct.App.2011) (citing Pruitt v. Zoning Bd. of City of Laurel, 5 So.3d 464, 469 (¶ 14) (Miss.Ct.App.2008)). In Stewart v. City of Pascagoula, 206 So.2d 325, 328 (Miss.1968), the supreme court held:
The circuit court can only consider the case as made by the bill of exceptions. This is the only record before the circuit court, as an appellate court. If the bill of exceptions is not complete and is fatally defective in that pertinent and important facts and documents are omitted therefrom, then the court does not have a record upon which it can intelligently act.
(Emphasis added). In McKee v. City of Starkville, 97 So.3d 97, 101 (¶ 11) (Miss.Ct. App.2012), this Court found that, although neither party “complied with the procedural requirements[,] ... the bills of exceptions filed with the circuit court contained the ‘pertinent and important facts and documents’ and constituted ‘a record upon which the court could intelligently act.’” (quoting Wilkinson Cnty. Bd. of Supervisors v. Quality Farms, Inc., 767 So.2d 1007, 1012 (¶ 14) (Miss.2000)). Therefore, we concluded that the circuit court had subject-matter jurisdiction over the merits of the appeal.
¶ 35. The issue before both the circuit court and this Court is whether the Board acted in an arbitrary, capricious, or discriminatory manner in rejecting Cooke’s bid. “[0]ur review is limited in scope and ... we may not stray from the record as was presented before the Board when [its] decision was reached.” Mayor & Bd. of Aldermen of Clinton v. Hudson, 774 So.2d 448, 453 (¶ 11) (Miss.Ct.App.2000) (citing Mathis v. City of Greenville, 724 So.2d 1109, 1115 (¶ 26) (Miss.Ct.App.1998)). Cooke’s motion to supplement was entered three months after the filing of its notice of appeal and the original bill of exceptions. The exhibits to the motion to supplement were produced as a result of the Board’s decision (i.e., the letters refuting the vendors’ negative comments and threatening legal action). Consequently, it was not part of the record before the Board when it rendered its decision to award the bid to Hanco. Thus, the original bill of exceptions provided the court with a complete record with which to make an informed decision, and neither Cooke’s motion to supplement nor the Board’s final bill of exceptions was proper to complete the record before the circuit court.
¶ 36. Regardless, the circuit judge concluded at the hearing:
I think to be perfectly clear, the Court is going to allow in everything that I have received to date, period. And then if you want to take that up all on appeal, take it up. But I think the record that I have read is reflective of what has happened.
*915 The circuit judge also stated in the “Order Affirming School Board Decision” filed on February 13, 2012:
[T]he court accepted, reviewed, and placed in [the] record all materials submitted on [February 3, 2012], The parties have both taken advantage of this [,] and the Court has reviewed all information submitted and finds that all parties have had ample and sufficient time to review and to respond to everything that has been presented and is part of the record on this Appeal and the Bill of Exceptions and accepts them as complete and correct.
(Emphasis added). Similar to our holding in McKee, we acknowledge that the procedural requirement was not wholly adhered to in this instance. However, we agree with the circuit court’s finding that any deficiency in notice did not affect the substantial rights of either party, and find no merit to this assignment of error.
CONCLUSION
¶ 37. The Board determined that Hanco had the “lowest and best bid.” Factors affecting the Board’s decision to award the bid to Hanco were: (1) Hanco was a Mississippi resident contractor; (2) Hanco’s bid was only 0.95% higher than Cooke’s bid; and (3) Cooke had received some less-than-favorable reviews from suppliers concerning untimely payment and clients regarding delays in construction. As the Board noted in its response to Cooke’s appeal, timely completion of the school’s construction was “critical”; the school was scheduled for occupation “during Christmas break 2012.” It speculated that any delay would have resulted in additional costs far exceeding the 0.95% difference in bid prices. There is no statutory or case authority that required the Board to award the contract to the lowest bidder, without consideration of these other factors.
¶ 38. As a result, we find no error in the circuit court’s decision to affirm the Board’s award of the contract to Hanco. Cooke’s remaining issues on appeal-that Board members could be held personally liable and that Cooke was entitled to lost profits and attorneys’ fees-are rendered moot by this decision.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. We also note that the bid proposals contained prices for excavation and soil removal that, if needed, would require a change order. Cooke’s price per cubic yard was $18; Han-co’s was only $15 per cubic yard for excavation and $10 for soil removal and replacement. Therefore, it is possible that the $89,000 price difference could be decreased if this work had been required.

. Section 31-3-21(3) requires a nonresident contractor to include its state's preference law with the sealed bid. Failure to do so results in a rejection of the bid. Neither party has brought this as an issue in the present case.

. See Miss.Code Ann. § 31 — 3—21(1)—(2)