# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00080-COA

CHARLES SCOTT                                                                    APPELLANT

v.

CITY OF ABERDEEN, MISSISSIPPI, EDWARD                          APPELLEES
HAYNES AND LADY B. GARTH

DATE OF JUDGMENT:            12/22/2023
TRIAL JUDGE:                         HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:   MONROE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JASON EDWARD OWENS
ATTORNEY FOR APPELLEES:      WALTER HOWARD ZINN JR.
NATURE OF THE CASE:          CIVIL - OTHER
DISPOSITION:                 REVERSED, RENDERED, AND
                             REMANDED - 09/02/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND LASSITTER ST. PÉ, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     In 2023, the Aberdeen Board of Aldermen voted 3-2 to reduce Mayor Charles Scott's

salary by $15,000.  Scott appealed the Board's decision to the Monroe County Circuit Court.

The circuit court affirmed the Board's decision, and Scott again appealed.  For the reasons

discussed below, we conclude that the Board's decision was arbitrary and capricious and was

not supported by substantial evidence.  Therefore, the decisions of the Board and the circuit

court are reversed and rendered, and the case is remanded for further proceedings consistent

with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     At a February 7, 2023 meeting of the Aberdeen Board of Aldermen, the Board voted

to reduce Mayor Charles Scott's annual salary by $15,000 for a "lack of confidence." In relevant part, the Board's minutes state:

> Alderman Haynes inquired about the status of repairs on North Matubby Street that's supposed to have been done and questioned why the pavement on Matubby Street stopped before a point on North Matubby Street.
>
> Alderman Haynes asked if the water leak on Chestnut and Jefferson Street had been looked at yet. Mayor Scott stated it was part of the review with William Sanford (Neel-Schaffer). Alderman Haynes asked about the trash on Locust Street behind Blair's TV Shop. We need to find out who's putting the trash in that location due to it not being in the blue trash can and Monroe County Solid Waste will not pick it up.
>
> There have been leaves on Jefferson Street for three weeks that have not been picked up. Alderman Haynes stated there are several bad spots on Vine Street where repairs were done but not followed up on. A concrete sidewalk was torn out when a water line was installed, but remains on the side of the curb. It needs to be put back in place or thrown away.
>
> Alderman Haynes asked about the project on Woodruff and Project Street. Mayor Scott said some work was done a week ago because twice in the past some work was done that started a secondary leak. A sidewalk drain on Meridian Street was mentioned a couple of meetings ago that still need attention. Mayor Scott stated the Public Works Supervisor and the City Inspector have seen the drain, and a list of sidewalks that has been evaluated and the cost to do it. Mayor Scott said training is in the works for Public Works employees to learn how to repair sidewalks.
>
> Alderman Haynes stated he has some issues to take into Executive Session because Ward Three has been neglected. . . . Alderman Haynes asked if Exit Interviews can be done with City employees when they quit, and ask why they are leaving and if the Board can do something different to fix the problem.
>
> . . . .
>
> A motion was made by Alderman Holliday, seconded by Alderman Haynes, to go into Executive Session to discuss personnel issues regarding . . . Mayor Charles Scott and [others]. On a roll call vote, Alderman Holliday, Alderwoman Garth, and Alderman Haynes voted "Aye." Alderwoman Odom and Alderman Allen voted "Nay."

[The Board went into Executive Session and later came out of Executive Session.]

. . . .

A motion was made by Alderman Haynes, seconded by Alderwoman Garth to reduce Mayor Charles Scott's salary by $15,000.00 because of lack of confidence in Ward Three. On a roll call vote, Alderman Holliday, Alderwoman Garth, and Alderman Haynes voted "Aye." Alderwoman Odom and Alderman Allen voted "Nay."

¶3. The record also includes an audio recording of the Board meeting. The recording shows that Alderman Edward Haynes initially made a motion "that the mayor be fined $10,000 for a lack of duty in Ward Three." Haynes stated, "I've gotten sick and tired of the fact that I don't receive information that I've asked for. And if I'm not going to receive it, then I don't think Ward Three's tax dollars should go toward the mayor's salary." When Haynes was asked to clarify his motion, he restated it as a motion to "reduce [Scott's] salary by $15,000 for lack of confidence from Ward Three." Haynes then complained again about "information" he perceived Scott had not provided. The nature of the "information" at issue is not clear from the recording or anything else in the record. Scott "suggested" that Haynes "rescind" his motion, stating that he (Scott) "actually work[ed]." Haynes responded that he "didn't say [Scott] didn't work." Raising his voice, Haynes then reiterated his displeasure about whatever "information" he believed he had not received. Alderwoman Lady B. Garth seconded Haynes's motion, and the Board voted 3-2 to reduce Scott's salary by $15,000.

¶4. Scott appealed the Board's decision to the Monroe County Circuit Court. Scott argued that the Board's decision to reduce his salary should be set aside because it was arbitrary and capricious and was not supported by substantial evidence.

3

¶5. The City's brief in the circuit court included various assertions that are not supported by the Board's minutes or the record. These include unsupported assertions about prior changes to the mayor's salary predating Scott's term in office, municipal "budgetary concerns," and the salaries of other cities' mayors. The City asserted that Scott's term as mayor had been "contentious, adverse and hostile" and that the Board had "struggled to rely on [Scott's] effectiveness as a day-to-day operator for the City." The City also asserted that "several directives from the board regarding street repairs, infrastructure improvement, state agency compliance, management of employees and transparency of city affairs ha[d] gone unaddressed or ignored" and that "[d]emands for accountability for this misfeasance and/or nonfeasance ha[d] been responded to with hostility, manipulation and deception." Finally, the City claimed, without specificity or factual support, that Scott had "exceeded his authority" under the City's special charter and "used [his] office . . . for personal gain and for the gain of others." Scott filed a motion to strike the City's brief to the extent it asserted facts not in the record.

¶6. The circuit court affirmed the Board's decision. The circuit court stated,

> As evidenced from the minutes of [the Board] meeting, Alderman Haynes presented a litany of complaints regarding deficiencies by Mayor Scott related to city matters, including road repairs, water leaks, trash pickups, decrepit sidewalks, and drainage issues. He expressly stated in the public session that he had "some issues to take into Executive Session because Ward Three ha[d] been neglected."

The court then found that "the Board's decision to reduce Scott's mayoral salary was aptly supported in the minutes by reason and judgment—the very opposite of arbitrary and capricious." In a footnote, the court denied Scott's motion to strike, stating that the issue was

4

"moot" because the court based its decision on the Board's "minutes alone." Scott filed a notice of appeal.

## ANALYSIS

¶7.     "Any person aggrieved by a judgment or decision of the . . . governing authority of a municipality[] may appeal the judgment or decision to the circuit court of the county . . . in which the municipality is located." Miss. Code Ann. § 11-51-75 (Rev. 2019); *see J&A Excavation Inc. v. City of Ellisville*, 371 So. 3d 199, 205 (¶19) (Miss. Ct. App. 2023) ("The circuit courts have appellate jurisdiction to review decisions of . . . municipal governing boards."). Judicial "review of such decisions is limited." *J&A Excavation Inc.*, 371 So. 3d at 205 (¶19) (brackets omitted) (quoting *Rod Cooke Constr. Co. v. Lamar Cnty. Sch. Bd.*, 135 So. 3d 902, 906 (¶5) (Miss. Ct. App. 2013)). We have explained that

> we will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence.

*Id.* (brackets omitted) (quoting *Rod Cooke Constr. Co.*, 135 So. 3d at 906 (¶5)).

¶8.     An appeal to a circuit court pursuant to section 11-51-75 is limited to the record created and evidence presented before the municipal board. *See* Miss. Code Ann. § 11-51-75(d) ("The circuit court, as an appellate court, . . . shall hear and determine the [appeal] on the record . . . ."); *Longo v. City of Waveland*, 353 So. 3d 437, 444 (¶21) (Miss. 2022) ("Section 11-51-75 does not allow the parties to conduct discovery on appeal or to go beyond

the record created before the local governing authority."). Therefore, "new evidence cannot be considered" on appeal. *Bd. of Supervisors of Jackson Cnty. v. Qualite Sports Lighting LLC*, 337 So. 3d 1040, 1046 (¶23) (Miss. 2022). In addition, we note that public boards "speak only through their minutes, and their acts are evidenced *solely* by entries on their minutes." *Jackson County v. KPMG LLP*, 278 So. 3d 1124, 1127 (¶9) (Miss. 2019) (quoting *KPMG LLP v. Singing River Health Sys.*, 283 So. 3d 662, 672 (¶28) (Miss. 2018)).

¶9.　　Our Attorney General's Office has consistently opined that "it is within the discretion of the governing board to establish the mayor's salary." Miss. Att'y Gen. Op., No. 2001-0682, 2001 WL 1627675, *Collins*, at *1 (Nov. 9, 2001).[1] The Attorney General has also consistently opined that "a board of aldermen may reduce or increase the salary of a mayor during their term of office, *provided that the salary is set in good faith and is not arbitrary and unreasonable when considered with the municipal resources and duties of the office*." Miss. Att'y Gen. Op., No. 2010-00638, 2010 WL 5172843, *Holder*, at *1 (Nov. 29, 2010) (emphasis added). The Attorney General's opinions on this subject are consistent with our Supreme Court's holding in *Alexander v. Edwards*, 220 Miss. 699, 71 So. 2d 785 (1954), that a municipal governing board has the authority to increase the salaries of the mayor and the board, and such actions will not be struck down unless the board "acted in bad faith" or the increase is "arbitrary or unreasonable . . . in relation to the resources of the town and the duties of the offices." *Id.* at 704, 71 So. 2d at 787.

---

[1] "Attorney General opinions are not binding, but they certainly are useful in offering guidance to the Court." *Jones Cnty. Sch. Dist. v. Dep't of Revenue*, 111 So. 3d 588, 602 (¶55) (Miss. 2013).

¶10. Here, based on the record, we are compelled to conclude that the Board's decision to reduce Scott's salary by $15,000 was arbitrary and capricious and is not supported by substantial evidence. The Board's minutes simply state, without further explanation, that the $15,000 pay cut was for a "lack of confidence." However, the minutes fail to mention *any* specific misconduct, incompetence, negligence, or dereliction of duty by Scott that would justify the salary reduction.

¶11. As noted above, the circuit court stated that the Board's "minutes" show that "Alderman Haynes presented a litany of complaints regarding deficiencies by Mayor Scott related to city matters, including road repairs, water leaks, trash pickups, decrepit sidewalks, and drainage issues." However, the Board's minutes, which are reprinted above in relevant part (*see supra* ¶2), do not support the circuit court's statement. The minutes, as well as the recording of the Board meeting, show that Haynes asked Scott a series of questions about the status of some street and sidewalk repairs, drainage issues, and trash pickups, which Scott answered. Nothing in Haynes's questions or Scott's answers establishes that Scott did anything wrong or failed to carry out his duties as mayor.

¶12. Finally, the unsupported assertions in the Board's appellate briefs cannot justify the Board's decision. As stated above, an appeal from a decision of a municipal board must be decided "on the record." Miss. Code Ann. § 11-51-75(d). "Section 11-51-75 does not allow the parties to . . . go beyond the record created before the local governing authority." *Longo*, 353 So. 3d at 444 (¶21); *accord Qualite Sports Lighting LLC*, 337 So. 3d at 1046 (¶23). Because there is simply *no evidence in the record* that Scott did or failed to do anything that

7

would justify a $15,000 reduction in his salary, the Board's decision is not supported by substantial evidence and is arbitrary and capricious. *See J&A Excavation Inc.*, 371 So. 3d at 207-08 (¶¶30-31). Therefore, the Board's decision must be reversed and set aside.

¶13.    Section 11-51-75(d) provides that "[i]f the judgment is reversed, the circuit court shall render such judgment or decision as . . . the governing authority of the municipality ought to have rendered, and certify the same to . . . the governing authority of the municipality." Miss. Code Ann. § 11-51-75(d). For the foregoing reasons, the Board's decision and the circuit court's decision must be reversed and rendered. We remand the case to the circuit court for a determination of what other relief, if any, is appropriate.

¶14.    **REVERSED, RENDERED, AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. WEDDLE, J., NOT PARTICIPATING.**